UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>TEXAS ROADHOUSE, INC., TEXAS ROADHOUSE HOLDINGS LLC, TEXAS ROADHOUSE MANAGEMENT CORP.,<br><br>     Defendants. | Civil Action No. 1:11-cv-11732 |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Texas Roadhouse, Inc., Texas Roadhouse Holdings LLC, and Texas Roadhouse Management Corp. (collectively, "Texas Roadhouse" or "Defendants") submit this memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b).

**I. BACKGROUND**

The Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") alleges that Texas Roadhouse has engaged in a nationwide pattern and practice of discriminating against applicants for employment who are 40 years of age or older, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). But the Complaint fails to state a claim for age discrimination because it lacks any concrete factual allegations to support an inference that Texas Roadhouse took any adverse action against any individual protected by the ADEA, or that any qualified candidate was denied a position on the basis of the candidate's age. In fact, the Complaint does not even identify a single individual incident of alleged discrimination in hiring

1

4817718 v1

practices or identify the policy that EEOC claims to give rise to the "pattern and practice" alleged.

Complaints lacking these fundamental details fail to plead a cause of action and fail to put a defendant on notice of the claims alleged. As a result, courts have dismissed similar Complaints under Fed. R. Civ. P. 12(b)(6), particularly those filed by the EEOC applying the bare-bones framework used here. Additionally, the ADEA does not authorize "pattern and practice" claims, and the EEOC has not pleaded a claim as to each individual Defendant. For these reasons, Texas Roadhouse asks that the Court dismiss EEOC's Complaint.

## II. ARGUMENT

### A. The Complaint does not plausibly support a pattern or practice of age discrimination.

#### 1. *Twombly* and *Iqbal* require concrete factual allegations and fair notice.

The EEOC's Complaint here does not comply with the federal pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009). Under the two-prong approach established in those cases, allegations that are nothing more than disguised legal conclusions are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1949-50 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). Once stripped of these allegations, a complaint is examined to determine whether the facts alleged state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility exists where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs' factual allegations must be particular

2

enough to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Pleading conduct that is only "consistent with" liability, on the other hand, is not sufficient to meet this standard. *Iqbal*, 129 S. Ct. at 1951 (noting that complaint contained bare assertions and that defendants' actions were likely also consistent with legal conduct); *Twombly*, 550 U.S. at 557 (holding that allegations must suggest, not merely be consistent with, illegal conduct). Neither are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 570. Therefore, for instance, the plaintiff in *Iqbal* could not state a claim of purposeful discrimination simply by pleading that the Attorney General was the "principal architect" of a deliberately discriminatory plan to subject Arab Muslims to harsh treatment. There were no concrete facts to nudge this theory into the realm of the plausible, and the concrete facts pleaded were only "consistent with" this theory.

Just as *Twombly* and *Iqbal* set forth the standards pleading the substantive components of a claim, they apply equally to a plaintiff's allegations, like the EEOC's here, that he or she can represent others with allegedly similar claims. *E.g.*, *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) ("[W]here a plaintiff brings an FLSA claim 'for and in behalf of himself . . . and other employees similarly situated,' the complaint should indicate who those other employees are, and allege facts that would entitle them to relief."; dismissing complaint that contained no factual basis from which to conclude that any similarly-situated employees existed); *see Nicholson v. UTi Worldwide, Inc.*, 2010 WL 551551 (S.D. Ill. Feb. 12, 2010); *Jones v. Casey's General Stores*, 538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008). Similarly, a "pattern and practice" case is not sustained simply by invoking those magic words; the plaintiff must come forward with a <u>factual</u> basis that supports the conclusion that such a policy exists and

3

affects a group of claimants. The court in *Hodczak v. Latrobe Specialty Steel Co.*, No. 08-649, 2009 WL 911311 (W.D. Pa. Mar. 31, 2009), for example, evaluated a plaintiff's purported "pattern and practice" ADEA claims under the *Twombly* framework and found that they fell short because the Complaint's allegations were "devoid of any facts which would support a collective action or which suggest that other class members even exist. Rather, plaintiffs merely conclude that plaintiffs' firings are part of a systematic pattern and practice of terminating older employees without offering any basis whatsoever that would 'raise a reasonable expectation that discovery will reveal evidence of' such a pattern and practice or evidence that a class of similarly situated employees who have been victims of the same policy or plan exist." 2009 WL 911311 at *9.

### 2. ADEA claims must plead certain fundamental facts to support a pattern or practice of discrimination.

As Texas Roadhouse shows below, the EEOC's Complaint does not comply with the *Twombly* and *Iqbal* pleading requirements as they apply to age discrimination claims. In support, Texas Roadhouse cites a handful of cases involving similar EEOC-written pleadings that were dismissed for lack of concrete, factual allegations. Some of those cases involved discrimination claims under Title VII, and others involved ADEA claims like the EEOC's here. It is important to note that all of the Title VII cases apply *a fortiori* here, however, because the pleading requirements are even stricter under the ADEA than it is under Title VII.

The Complaint claims Texas Roadhouse's hiring practices discriminate against workers age 40 and over, persons protected by the ADEA, not Title VII. A *prima facie* case of age discrimination in hiring alleges "(i) that [the applicant] is a member of a protected class; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position

4

4817718 v1

remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Summers v. Harvard University*, 397 F. Supp. 2d 166, 172 (D. Mass. 2005) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Moreover, a '*prima facie* case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" *Id.* (*citing O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)).

ADEA claims like Plaintiff's differ from Title VII claims in a number of ways relevant to pleading standards. First, the "but-for" test for liability is stricter than the Title VII, "mixed-motive" test: ADEA plaintiffs must prove, and therefore plead facts supporting the conclusion, that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 2349. Second, as also emphasized in *Gross*, the ADEA and Title VII are distinct statutory schemes enacted to remedy distinct forms of discrimination; treating them as interchangeable frustrates Congress's clear directives. *Id.* at 2349 (distinguishing Title VII from the ADEA, noting that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination."); *see Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1442 (11th Cir. 1985), *cert. denied*, 474 U.S. 1005 (emphasizing that age discrimination is "qualitatively different from race or sex discrimination," and that age "is not a discreet and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative

ones."). Third, unlike Title VII, which in 42 U.S.C. § 2000e-6(a) expressly allows the EEOC to bring a pattern and practice claim, the ADEA contains no such language.

All of these differences impose upon the EEOC a stricter pleading obligation in an ADEA case. *Cf. EEOC v. UPS*, No. 09-cv-5291, 2011 WL 4538450 (N.D. Ill. Sept. 28, 2011) (applying similar reasoning to hold the EEOC's ADA allegations to a stricter *Twombly/Iqbal* analysis than similar Title VII claims). The EEOC must plead sufficient facts to make "plausible on its face" a claim that some policy of Texas Roadhouse creates a pattern and practice of making age, to the exclusion of other, legitimate bases, a "but-for" factor in its hiring practices, and the EEOC must identify the pattern or practice with sufficient specificity to put the Texas Roadhouse Defendants on notice of the nature of the claims against them – what exactly have they done, and who exactly has been harmed? Under either framework, however, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). And the Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964.

Recent cases demonstrate that the EEOC's Complaint here does not satisfy these pleading requirements. *EEOC v. Phil Vinar Furniture, Inc.*, No. 09-4052, 2010 WL 914775 (C.D. Ill. Mar. 9, 2010), for example, involved a Complaint following the same EEOC format used here, although alleging ADA and Title VII claims. The Court determined that the Complaint did not satisfy *Twombly* because it did not state the employee's gender, race, or disability, and did not plead that the employee was employed by the Defendant. *Id.* at *3. More importantly, the court refused to entertain claims on behalf of other, unnamed employees because to do so would not put the defendant on notice of the claims against it: "if Plaintiff seeks to pursue action on behalf

6

of the 'female employees' and 'African-American and Hispanic applicants' referenced in ¶¶ 9 and 11, it should either name the employees and applicants or pursue the claims as a class action pursuant to Fed. R. of Civ. P. 23." *Id.*

Other cases adopt similar reasoning to dismiss EEOC complaints that allege systemic discrimination without placing the defendant on notice of the particular, discriminatory conduct alleged or individuals involved. *See EEOC v. Tuscarora Yarns, Inc.*, No. 1:09-cv-217, 2010 WL 785376, *1 (M.D.N.C. March 3, 2010) (" . . . EEOC's complaint, while flush with innuendo, lacks sufficient *facts* . . . . If Rule 12(b)(6) is to serve any useful purpose, it must require a plaintiff to set forth sufficient facts to state a claim at the initial pleading stage before expensive discovery ensues.").

Another court similarly criticized an EEOC complaint alleging race and age discrimination in *EEOC v. Wells Fargo Financial Michigan, Inc.*, No. 10-13517, 2011 WL 1690037 (E.D. Mich. May 4, 2011), noting that the complaint appeared to identify a number of incidents of discrimination in a conclusory way without articulating the facts underlying the incidents or the individuals involved:

> [w]hile the amended complaint references the same time period, it now alleges that Wells Fargo selected five lesser qualified Caucasians and five younger individuals for promotion. Thus, five promotions now appear at issue. Again, it is not clear to what extent the EEOC's claims are age or race related, or both, as to each instance of failing to promote."

2011 WL 1690037 at *4. The Court found this unsatisfactory and ordered that "at a minimum" the amended Complaint must state the dates of the alleged discrimination; the name, age, and race of the alleged lesser qualified candidates; and "factual allegations to support the claim for damages." *Id.*

Similarly, *Kasten v. Ford Motor Co.*, No. 09-11754, 2009 WL 3628012 (E.D. Mich. Oct. 30, 2009), rejected an age discrimination complaint under *Iqbal*, saying:

> The Complaint states Plaintiffs' ages, but does not name those who replaced them, or give their ages. It identifies the policy which resulted in their severance, but does not explain why forced-ranking procedures disproportionately target older workers. It claims Ford was aware that such programs have discriminatory propensities, yet it does not state where this awareness came from, or supply evidence from which to infer that Ford designed the SIRP purposefully to cut older workers from its ranks.

*Id.* at *6. Finally, in *EEOC v. United Parcel Service, Inc.*, No. 09-cv-5291, 2010 WL 3700704 (N.D. Ill. Sept. 10, 2010), the court dismissed the EEOC's ADA complaint where it failed to allege that purported class members were "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation."). The EEOC's Complaint here is just as coy, as no *facts* (as opposed to conclusory allegations) appear in the Complaint to support the EEOC's claim.

### 3. The Complaint here does not provide concrete factual allegations or fair notice.

The Complaint here suffers from the same defects identified in the cases above. The Complaint consists of a mere ten numbered paragraphs. The only allegations of discriminatory conduct are reduced to paragraphs eight through ten. Paragraph eight is divided into subparagraphs, which allegedly identify "unlawful employment practices" by the Texas Roadhouse Defendants (apparently all three of them) at "their facilities nationwide." Absent are the identities of any concrete employment practice or any particular "facility" where the conduct allegedly occurred. Paragraph 8(a) claims that since January 1, 2007 the Texas Roadhouse Defendants have, for discriminatory reasons, "fail[ed] to hire" persons age 40 or older "for front of the house and other publicly visible positions." But no such person or incident is identified.

Paragraph 8(b) offers a purported statistical basis for the alleged discrimination, claiming that only 1.9% of Texas Roadhouse's "front of the house employees" is in the protected age group, which is allegedly "well below" the age group's representation in the general population, in Bureau of Labor Statistics data for "such positions within the industry," and in "the pool of applicants for positions with Defendants." Paragraph 8(b) also alleges that these differences are statistically significant.

Paragraph 8(c) claims that the Texas Roadhouse Defendants "instructed their managers to hire job applicants not in the protected age group." It cites as "examples" of this instruction, 1) a PowerPoint used in training managers and 2) Defendants' training and employment manuals. According to this paragraph, one slide in the PowerPoint states that managers should "Know what a front of the house employee looks like," and the next slide shows a picture of "young people." This paragraph also alleges that "all of the images of employees in Defendants' training and employment manuals are of young individuals."

Paragraph 8(d) contains ten age-related statements that Plaintiff claims were made by "Defendants' hiring officials" to "older unsuccessful applicants."

Finally, paragraphs 9 and 10 are bare assertions that the conduct identified in paragraph 8 "deprived a class of potential employees in the protected age group of equal employment opportunities" and was "willful" under the FLSA.

These threadbare allegations hardly put the Texas Roadhouse Defendants on notice of the alleged "pattern and practice" at issue, the individuals described in the Complaint, the dates of the conduct described, or any concrete facts from which to infer that the Texas Roadhouse Defendants acted in violation of the law.

To begin, the statistical allegations in paragraph 8(b) are rife with conclusory statements, such as conclusory assessments of what is "well below" or "statistically significant," what are "such positions within the industry," and what is "the pool of applicants for positions with Defendants." Whether statistical evidence supports an inference of discrimination is subject to much more scrutiny than that. *See, e.g.*, *EEOC v. United Virginia Bank/Seaboard National*, 615 F.2d 147, 152 (4th Cir. 1980) ("figures falling outside two or three standard deviations from the expected values constitute a statistically significant difference"); *Sperling v. Hoffman-La Roche, Inc.*, 924 F. Supp. 1346, 1371 (D.N.J. 1996) (data 2.2 standard deviations not "particularly, statistically significant" in pattern or practice claim). If the EEOC is aware of facts that show a statistically significant difference, it should at least allege the disparity concretely by quantifying the difference.

More importantly, however, even if the EEOC had supported its statistics-related conclusions with concrete facts, these allegations are exactly the kind that might be construed as "consistent with" discrimination but do not suggest liability any more than they suggest a legally permissible explanation. In other words, there are various legitimate, non-discriminatory reasons that persons age 40 or older might be under-represented in a given job position. *See Iqbal*, 129 S. Ct. at 1951 (a policy's disparate impact on Arab Muslims did not plausibly suggest that the Attorney General intentionally designed the policy to be discriminatory). Even assuming the statistics are true, they do not give rise to a plausible inference that discrimination is at play because they do not suggest that any applicant who "applied and was qualified" was rejected "despite her qualifications" or that Texas Roadhouse "continued to seek applicants from persons of complainant's qualifications." *Summers*, 397 F. Supp. 2d at 172.

10

Paragraph 8(c)'s allegations regarding the PowerPoint and employee training materials are even more tenuous. This paragraph alleges, in a conclusory way, that the Texas Roadhouse Defendants "instruct" their managers not to hire members of the protected class. But the so-called "examples" of this "instruction" it cites—pictures of "young individuals," which is itself yet another conclusory description—do not plausibly suggest such an instruction. Having pictures of young people in training materials does not begin to suggest that an employer has a discriminatory motive or that any individual was subjected to adverse action by Texas Roadhouse based on age, and the EEOC's statement that such an instruction was given by Texas Roadhouse is far too conclusory to support a claim: "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Iqbal*, 129 S. Ct. at 1951. Even assuming that images of "young individuals" appear in Texas Roadhouse's training materials, it does not follow that those images represent an "instruction" not to hire applicants protected by the ADEA.

Finally, not even the ten anonymous statements in paragraph 8(d) give rise to an inference of discrimination. The Complaint apparently suggests that the "hiring officials" to whom these statements are attributed are the individuals who decided not to hire some number of unnamed applicants. The Complaint should at least specify that much. *See, e.g.*, *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000) ("Typically, statements made by 'one who neither makes nor influences [a] challenged personnel decision are not probative in an employment discrimination case.'"); *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) (affirming summary judgment on ADEA and ADA claims, noting that "'stray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone,

to establish either pretext or the requisite discriminatory animus."); *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 13 (1st Cir. 1998) ("'[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself' normally are insufficient to prove [an] employer's discriminatory animus.").

But even if true and attributable to decisionmakers, these alleged statements do not support a discriminatory pattern and practice by Texas Roadhouse. There is nothing discriminatory, for instance, about the question "How do you feel about working with younger people?" And because the Complaint does not allege when these ten statements were made, who made them, or to whom they were made, it is impossible to assess whether the statements plausibly indicate some discriminatory motive on the part of Texas Roadhouse. Notably, the remarks were allegedly made to "older" applicants, not necessarily even applicants who qualify for protection under the ADEA (*i.e.* applicants over age 40). The reader cannot even tell if these statements were made in connection with any hiring decision, let alone a decision not to hire an individual who qualifies for protection under the ADEA and who was otherwise qualified for a position with Texas Roadhouse.

### 4. The Complaint here does not even identify what policy gives rise to the "pattern or practice" alleged.

Just as the Court cannot plausibly infer any pattern or practice from these threadbare allegations, the Texas Roadhouse Defendants cannot discern what, exactly, they are alleged to have done in violation of the law. In other words, the Complaint does not identify sufficient factual information to put Texas Roadhouse on notice of the key allegations. What *is* the pattern or practice the EEOC claims the Texas Roadhouse Defendants have engaged in that produces the alleged statistical disparity? What facts connect this alleged statistical disparity to a policy of the Texas Roadhouse Defendants? In *Kasten*, the complaint at least identified the policy being

challenged – an employee ranking procedure – but even that was insufficient to avoid dismissal because the Complaint neither explained "why" the policy resulted in discriminatory results nor "suppl[ied] evidence from which to infer that [the defendant] designed the [policy] purposefully to cut older workers from its ranks." *Kasten*, 2009 WL 3628012 at *6.

Here, fatally, the EEOC has not even identified the policy alleged to be at issue. The Supreme Court recently reiterated the importance of this information to a pattern and practice claim. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Court faulted the plaintiffs' Title VII "pattern and practice" claims for failing to identify the corporate policy at issue. *Id.* at 2554 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice . . . ."). No amount of statistical evidence, standing alone, will make a pattern or practice appear out of thin air – rather, "[t]he plaintiff must begin by identifying the specific employment practice that is challenged." *Id.* at 2555 (*quoting Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).

At a minimum, the EEOC must present this basic information to put the Texas Roadhouse Defendants on notice of the claims against them. In order to give Texas Roadhouse fair notice, the Court should require the EEOC to identify the company policy at the center of the EEOC's claims, as required by *Dukes*, and "detail[] the events leading to [the alleged adverse actions], provide[] relevant dates, and include[] the ages . . . of at least some of the relevant persons involved." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (pre-*Twombly* holding).

Plaintiff may well argue that something about the "pattern and practice" nature of its claims should relieve it of these basic, notice-pleading obligations. But nothing about the EEOC's choice to pursue this case as a pattern or practice claim changes the substantive elements that must be proved, and pleaded, to support an ADEA-based Complaint. *See Hohider v. UPS, Inc.*, 574 F.3d 169, 185 (3d Cir. 2009) ("It is the ADA, however, and not the *Teamsters* evidentiary framework, that controls the substantive assessment of what elements must be determined to prove a pattern or practice of unlawful discrimination in this case."). And as shown below, the ADEA does not authorize a pattern and practice claim to begin with.

### B. The ADEA does not authorize pattern and practice claims.

The EEOC's claims should also be dismissed because the ADEA, unlike Title VII or the ADA, does not recognize a "pattern and practice" cause of action. In examining whether the mixed-motive test for liability applicable under Title VII applied to ADEA claims, the Supreme Court in *Gross* began its analysis by homing in on the differences between these two comprehensive schemes. *Gross*, 129 S. Ct. at 2350 (stating that "[o]ur inquiry . . . must focus on the text of the ADEA," and noting that whether a particular claim exists "is a decision for Congress" and the Court "must give effect to Congress' choice"). Ultimately the holding in that case – that the ADEA did not recognize the "mixed-motives" test identified in Title VII – was founded on the inescapable reality that Congress provided for one thing in Title VII "but did not similarly amend the ADEA." *Id.* at 2350 n. 3; *accord. Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (Courts have a "duty to refrain from reading a phrase into the statute when Congress has left it out. 'Where Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (internal citations omitted)).

14

The ADEA incorporates the enforcement mechanisms of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 626(b). The EEOC is empowered to seek various forms of relief on behalf of workers, including back pay, injunctive relief, and liquidated damages for "willful" violations. *Id.*; 29 U.S.C. §§ 216(b), 217. Title VII, on the other hand, does not rely on the FLSA for enforcement. It expressly authorizes a civil action for relief when the government has reasonable cause to believe that an employer is engaged in a "pattern or practice" of intentional discrimination. 42 U.S.C. § 2000e-6. The ADA incorporates 42 U.S.C. § 2000e-6(a), the provision that authorizes the government to bring pattern-or-practice suits under Title VII. *See* 42 U.S.C. § 12117(a). But the ADEA does not.

Although the ADEA bears certain similarities to Title VII, this Court cannot graft the *enforcement devices* of Title VII onto the ADEA without violating the fundamental premise behind *Gross*. Whereas both the ADEA and Title VII are designed to stop similar discriminatory practices, "the rights created by the ADEA are to be 'enforced in accordance with the powers, remedies and procedures' of specified sections of the FLSA." *Lorillard v. Pons*, 434 U.S. 575, 579 (1978) (*quoting* 29 U.S.C. § 626(b)); *see Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989) ("Section 7(b) of the ADEA incorporates enforcement provisions of the . . . FLSA . . . . and provides that the ADEA shall be enforced using certain of the powers, remedies, and procedures of the FLSA." (citations omitted)). Conspicuously absent from any of the enforcement provisions of the ADEA, including the incorporated provisions of the FLSA, is any authority for a pattern or practice cause of action. Accordingly, the Court cannot presume this result is an oversight: "[t]he enforcement scheme for the [ADEA] is complex—the product of considerable attention during the legislative debates . . . . The bill that was ultimately enacted is something of a hybrid, reflecting, on the one hand, Congress' desire to use an existing statutory

15

scheme and a bureaucracy with which employers and employees would be familiar and, on the other hand, its dissatisfaction with some elements of each of the pre-existing schemes." *Lorillard*, 434 U.S. at 577-78. What Congress chose for Title VII and the ADA it did not choose for the ADEA, and the EEOC therefore cannot pursue "pattern and practice" claims against the Texas Roadhouse Defendants.

### C. The Complaint fails to state a claim against each Defendant.

Finally, the Complaint is also defective because it makes no attempt to distinguish among the conduct of the three Defendants. It claims that Texas Roadhouse, Inc. is the parent company of the other Defendants, but it claims all Defendants are liable for the same conduct. The EEOC's approach of lumping Defendants together and regarding them as a single entity has been rejected before.

Generally, related corporations are treated as a single entity only in extreme circumstances. In *Brown v. Fred's, Inc.*, 494 F.3d 736 (8th Cir. 2007), a Title VII case, the court explained the "strong presumption that a parent company is not the employer of its subsidiary's employees, and [that] courts have found otherwise only in extraordinary circumstances." 494 F.3d at 739 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993); *Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)). "A parent company may employ its subsidiary's employees if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer or (b) the parent company is linked to the alleged discriminatory action because it controls "individual employment decisions." *Id.*

This preservation of corporate separateness requires the Court to grant a 12(b)(6) motion where the EEOC does not plead some factual basis for its conclusory assertion that related defendants acted in concert. One court, doing just that, has stated:

16

> EEOC has not alleged any specific facts to support its claim that the Defendants were alter egos, joint-employers, successors, or an integrated enterprise. EEOC's allegation that the conduct at issue is attributable to all Defendants because each acted "as a successor, alter ego, joint employer, integrated enterprise, agent, employee ...." or "under the direction and control of the others" is merely a conclusory allegation. EEOC does not plead any specific factual allegations that explain how the four Defendant companies are related to each other.

*EEOC v. American Laser Centers, LLC*, No. 09-CV-2247, 2010 WL 3220316, *5 (E.D. Cal. Aug. 13, 2010). The EEOC has pleaded no supporting facts here for its assertion that all Defendants are liable for the same conduct.

## II. CONCLUSION

Like the Complaint in *Tuscarora Yarns, Inc.*, 2010 WL 785376, the EEOC's Complaint here is "flush with innuendo" but "lacks sufficient *facts*" to state a claim. It identifies no job applicants, no policy of the Texas Roadhouse Defendants, and no concrete incidents of allegedly discriminatory conduct – yet it alleges in a wholly conclusory and unsupported way that the Texas Roadhouse Defendants have engaged in some nationwide pattern and practice of age discrimination. "If Rule 12(b)(6) is to serve any useful purpose, it must require a plaintiff to set forth sufficient facts to state a claim at the initial pleading stage before expensive discovery ensues." *Id.* at *1. To give Defendants fair notice of the claims against them, the Court should dismiss the EEOC's Complaint with leave to amend. But under no circumstance should the amended claims be permitted to follow an unauthorized "pattern and practice" cause of action or regard all three Texas Roadhouse Defendants as interchangeable.

Date: January 31, 2012                    Respectfully submitted,

                                          Defendants Texas Roadhouse, Inc.,
                                          Texas Roadhouse Holdings LLC, and
                                          Texas Roadhouse Management Corp.

17

By their attorneys,


/s/ M. Amy Carlin
Robert P. Joy
B.B.O. #254820
M. Amy Carlin
B.B.O. #648336
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666
rpjoy@morganbrown.com
acarline@morganbrown.com

and

William C. Martucci*
Kristen A. Page*
Carrie A. McAtee*
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
(816) 474-6550
wmartucci@shb.com
kpage@shb.com
cmcatee@shb.com

*Admitted *pro hac vice*.

**Certificate of Service**

       I hereby certify that this document filed through the ECF system on January 31, 2012 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

       /s/ M. Amy Carlin
       M. Amy Carlin

4817718 v1