UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
    Plaintiff,

v.

CIVIL ACTION NO. 11-11732-DJC

TEXAS ROADHOUSE, INC., TEXAS
ROADHOUSE HOLDINGS LLC, and
TEXAS ROADHOUSE MANAGEMENT
CORP., d/b/a TEXAS ROADHOUSE,
    Defendants.

ORDER ON DEFENDANT'S MOTION TO COMPEL (#117)

KELLEY, U.S.M.J.

Familiarity with the background of this case as set forth in the Court's order on Motion No. 132 is presumed.

Defendants moved to compel the EEOC to answer specific written discovery requests and produce related documents. (#117) The Court addresses the specific requests below.

A. Second Set of Interrogatories Nos. 14 and 15

Interrogatory No. 14 asks the plaintiff to "[s]tate the date when you first began investigating any alleged unlawful practices by Defendants that form the basis of the Charge underlying the Amended Complaint." (#117, exh. 2, p. 8) Interrogatory No. 15 asks the plaintiff to "[s]tate the date when you first began investigating any unlawful practices by Defendants on behalf of a class of identified or unidentified individuals who were denied employment by Defendants because of their age." (*Id.*) The plaintiff responded to each interrogatory as follows:

    EEOC objects to this Interrogatory on the grounds that it is vague,

> ambiguous, and confusing. EEOC objects to this Interrogatory on the grounds that it seeks to invade the government deliberative process privilege. Notwithstanding and without waiving that objection, Defendants received the notice of the investigation by letter dated March 30, 2009. Any other information relating to the commencement of the investigation is wholly irrelevant to any claims or defenses in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

(#117, exh. 2, pp. 8-9)

It is not disputed that the Director of EEOC's Boston Area Office started the action against Texas Roadhouse by letter dated March 30, 2009 (the "Charge of Discrimination") alleging violations of the ADEA by Texas Roadhouse. (#35 ¶ 25, #24, exh. 2) The Charge of Discrimination informed defendants that they were under investigation, and included EEOC's first Request for Information ("RFI"), which put defendants on notice that the investigation would reach back to January 1, 2007. (#122, p.3) Defendants were asked to provide, among other things, information concerning hiring policies and employee information for Texas Roadhouse's New England and New York restaurants. Soon after, the EEOC began requesting information from Texas Roadhouse about all but one of its restaurants nation-wide. Over the next eighteen months, Texas Roadhouse and the EEOC engaged in a series of communications which culminated in the EEOC sending Texas Roadhouse a Determination on the Charge of Discrimination ("Letter of Determination") dated October 8, 2010, in which the EEOC informed defendants that it had determined that they had engaged in "a nationwide pattern or practice of age discrimination in hiring . . . ." (#24, exh. 2, p.4) Conciliation efforts began on October 8, 2010 and concluded eleven months later on September 6, 2011. (#122, pp. 3-8)

In its Opposition to the Defendants' Motion to Compel, the EEOC asserts that the date of the

> ambiguous, and confusing. EEOC objects to this Interrogatory on the grounds that it seeks to invade the government deliberative process privilege. Notwithstanding and without waiving that objection, Defendants received the notice of the investigation by letter dated March 30, 2009. Any other information relating to the commencement of the investigation is wholly irrelevant to any claims or defenses in this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

(#117, exh. 2, pp. 8-9)

It is not disputed that the Director of EEOC's Boston Area Office started the action against Texas Roadhouse by letter dated March 30, 2009 (the "Charge of Discrimination") alleging violations of the ADEA by Texas Roadhouse. (#35 ¶ 25, #24, exh. 2) The Charge of Discrimination informed defendants that they were under investigation, and included EEOC's first Request for Information ("RFI"), which put defendants on notice that the investigation would reach back to January 1, 2007. (#122, p.3) Defendants were asked to provide, among other things, information concerning hiring policies and employee information for Texas Roadhouse's New England and New York restaurants. Soon after, the EEOC began requesting information from Texas Roadhouse about all but one of its restaurants nation-wide. Over the next eighteen months, Texas Roadhouse and the EEOC engaged in a series of communications which culminated in the EEOC sending Texas Roadhouse a Determination on the Charge of Discrimination ("Letter of Determination") dated October 8, 2010, in which the EEOC informed defendants that it had determined that they had engaged in "a nationwide pattern or practice of age discrimination in hiring . . . ." (#24, exh. 2, p.4) Conciliation efforts began on October 8, 2010 and concluded eleven months later on September 6, 2011. (#122, pp. 3-8)

In its Opposition to the Defendants' Motion to Compel, the EEOC asserts that the date of the

underlying charge, March 30, 2009, is the starting point for the agency's investigation. (#125, p. 5) The EEOC states that it has "provided Texas Roadhouse with all of the information it needs to mount its asserted defenses of laches and failure to investigate. Defendants are well aware of both the date of the initial charge that spurred EEOC's investigation, March 30, 2009, as well as the date this litigation was filed, September 30, 2011; these dates are all Texas Roadhouse needs to argue that EEOC unduly delayed in filing this lawsuit." (#125, p. 4) The plaintiff contends that defendants are in possession of all non-privileged portions of the administrative file, including notes of all witness interviews, as well as documentary evidence collected during the investigation. (#125, p. 4)

Texas Roadhouse argues that it is entitled to know what the EEOC knew about Texas Roadhouse, and when, prior to the filing of the March 30, 2009 Charge of Discrimination. Defendants say that they need to know precisely what the EEOC knew about the alleged discrimination prior to the filing of the Charge of Discrimination so that they may prepare their "scope-of-the-investigation defense" and laches defense. (#118, p. 2)

For the reasons stated in the Court's Report and Recommendation on plaintiff's motion for partial summary judgment on defendants' affirmative defenses concerning the EEOC's investigation and laches (#121), the Court is not prepared to recommend that the District Court find at this time that as a matter of law, the defendants are precluded from raising a defense of laches. The Court does, however, find that the March 30, 2009 Charge of Discrimination, the letter which the EEOC sent to defendants putting them on notice that they were under investigation, is the proper starting point for discovery concerning the investigation of the defendants. *See EEOC v. Timeless Investments, Inc.*, 734 F. Supp. 2d 1035, 1068-69 (E.D. Cal. 2010) (time period for assessing laches defense was time between filing of charge and filing of lawsuit); *Acorn Niles Corp*, 1995 WL

519976, at*4 (N.D. Ill. Aug. 30, 1995) (same).

Texas Roadhouse explains that "[u]nderstanding when the EEOC launched its investigation allows Defendants to analyze why the EEOC waited so long to inform Defendants about the alleged discrimination it claims to have uncovered." (#138, p. 2) Defendants, however, were put on notice that they were under investigation in 2009, and were informed that the EEOC intended to "reach back" to 2007 in seeking relief. (#122, p. 3)[1] This is not a case like *EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199, 1203-04 (8th Cir. 1982), cited by defendants, where the EEOC took five years and eight months to process a claim after notice to the employer, and the employer was able to demonstrate prejudice from the delay. Here, the defendants were notified in 2009 that the EEOC was investigating their hiring practices back to 2007. The Letter of Determination was issued eighteen months and eight days later. Conciliation efforts occupied the next eleven months. From the date of the Charge of Discrimination to the filing of the complaint, two years and six months passed. Defendants are free to make an argument that they have been prejudiced by the passage of that time period. Whatever the EEOC knew or suspected about Texas Roadhouse's allegedly discriminatory practices prior to the Charge of Discrimination, however, is not relevant to the issues in the case.

B. <u>Second Set of Interrogatories No. 33</u>

The defendants' Interrogatory No. 33 requests that the plaintiff "[d]escribe each and every method of communication you, or anyone acting on your behalf, employed to contact Unsuccessful Applicants, providing: (a) the method(s) of contact you used to contact each Unsuccessful Applicant,

---

[1] At the hearing August 21, 2014 hearing, the plaintiff confirmed that it was not seeking relief for anything prior to 2007. (Transcript, #164, p. 40)

4

and (b) the identity of the investigator or person who contacted each Unsuccessful Applicant." (#117, exh. 2, p. 14)

At the hearing on August 21, 2014, the EEOC agreed to provide the defendants with the methods of contact and the names of the persons who made the contacts. (Transcript, #164, pp. 62-65) This information is to be provided for pre-litigation contact only.

### C. Second Set of Interrogatories Nos. 31 and 32

Defendants request that the plaintiff "[i]dentify each and every Unsuccessful Applicant with whom you have had any interaction relating in any way to the Amended Complaint but for whom you are not seeking relief in connection with this Lawsuit or who has requested that you not seek relief on his or her behalf, including but not limited to the allegations upon which this Lawsuit is based." (#117, exh. 2, p. 13) Defendants also request that the plaintiff "[i]dentify each and every Unsuccessful Applicant with whom you have had any interaction relating in any way to the Amended Complaint who lacks knowledge of or denies that Defendants discriminated against him or her on the basis of age including, but not limited to, the allegations upon which this lawsuit is based." (#117, exh. 2, p. 14) Plaintiff objects to both of these interrogatories by stating: "EEOC objects to this Interrogatory on the basis of attorney client and work product privileges. In addition, EEOC objects to this request as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." (#117, exh. 2, pp. 13-14)

The EEOC must provide this information for any pre-litigation communications with unsuccessful applicants. Any post-litigation contact is protected by the attorney client privilege and the attorney work product privilege. See *EEOC v. Consolidated Edison Co. of New York, Inc.,* 557 F. Supp. 468, 474 (S.D.N.Y. 1983) (when filing suit under the ADEA (unlike Title VII), EEOC

becomes the "sole cognizable plaintiff" and individual nonparty claimants are not permitted to "opt-out" of the suit); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 461-62 (N.D. Ill. 1990) (EEOC becomes *de facto* counsel for employees in case brought under ADEA).

### D. First Request for Production of Documents Nos. 15 and 16

In request No. 15, defendants request that plaintiffs "[p]roduce all documents and records reflecting any communications about this litigation and/or the allegations in the Amended Complaint that you gave or sent to or received from any current employee of, former employee of, or applicant for employment with defendants." (#117, exh. 1, pp. 17-18)

To the extent these communications took place prior to the filing of the lawsuit, they should be turned over. Post-litigation, this information is protected by the attorney work product privilege.

In request No. 16, plaintiff requests that defendants "[p]roduce all documents relating to any correspondence or other communications with any person whom you believe possesses knowledge of the facts, circumstances, allegations, and/or claims involved in the litigation initiated by the EEOC's Amended Complaint." (#117, exh. 1, p.18)

As the Court ruled at the August 21, 2014, hearing, this request is denied as too broad.

### E. Third Set of Interrogatories

Defendants request that plaintiff provide a wide range of information concerning the EEOC's public statements about the lawsuit. (#117, pp. 4-5)

For the reasons stated on the record at the August 21, 2014 hearing, this information is not discoverable at this time. If pre-trial publicity by the plaintiff has, in fact, tainted the jury pool, that is a matter for the trial judge to deal with at the time of trial. If defendants can point to some specific

way in which the EEOC's statistical claims might be countered by evidence that the "media campaign" has discouraged older workers from applying for jobs, the Court will revisit the issue.

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

September 9, 2014.