UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-cv-11732-DJC |
| TEXAS ROADHOUSE, INC., TEXAS ROADHOUSE HOLDINGS LLC, and TEXAS ROADHOUSE MANAGEMENT CORP., d/b/a TEXAS ROADHOUSE | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON EEOC'S OBJECTIONS
TO DEFENDANTS' PRIVILEGE LOG (#254)

December 2, 2015

KELLEY, U.S.M.J.

This dispute goes back to May, 2015, when the EEOC notified Defendants and the Court that in reviewing documents provided by Defendants in discovery, counsel for the EEOC found 19 emails that appeared to be from or copied to former counsel for Defendants. (#315.) This prompted Defendants to take a close look at the discovery they had given the EEOC, and by the end of June, Defendants notified the EEOC that they intended to "claw back" thousands of documents. (#347 at 2-3.) In mid-July this Court ordered the parties to confer regarding the documents at issue and made various findings concerning related problems that had arisen (for example, Defendants accused the EEOC of violating court orders by looking at certain documents and the Court found that the claw back agreement earlier entered into by the parties

1

should be revised, see #365 for Court's order.)  On August 28, the Court ordered that the parties confer concerning documents that were still under dispute and ordered Defendants to provide the Court with a privilege log and any remaining documents claimed to be privileged for an in camera review.  (#390.)  On October 13, the parties reported that there were 16 documents still in dispute.  Defendants filed an ex parte brief and provided the Court with copies of these documents on October 19, 2015.  The parties filed further memoranda concerning these documents.  (#420, Defendants' response to EEOC's objections; #424, EEOC's memorandum in support of its final objections to privilege log; #428, Defendant's reply.)

On November 16, 2015, the Court held a hearing by telephone concerning this matter and others.  The Court notified Defendants that the Court had questions concerning the 16 documents claimed to be privileged and invited Defendants to respond and/or to have an ex parte hearing with the Court to discuss the Court's concerns.  On November 20, 2015, counsel for Defendants appeared for an ex parte hearing.  After the hearing, counsel for Defendants filed an ex parte letter responding to certain of the Court's questions raised at the November 20 hearing.

After careful consideration of the applicable law, the parties' filings and the Defendants' oral argument, the Court makes the following findings.

I.  The law pertaining to privilege

This is a federal question case and so the federal common law of privilege applies.  Fed. R. Evid. 501, see *In Re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).  Defendants, who are invoking the privilege, bear the burden of establishing that the privilege applies.  *State of Maine v. United States Dep't of the Interior*, 298 F.3d 60, 71 (1st Cir. 2002).

A. <u>Attorney-client privilege</u>

Wigmore set out the elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) except the protection be waived.

*Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J. H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)). The privilege is limited in that it "applies only to the extent necessary to achieve its underlying goal of ensuring effective representation between lawyer and client." *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001), citing *United States v. Nixon*, 418 U.S. 683, 709-10 (1974). *See also In re XYZ Corp.*, 348 F.3d at 22 (The attorney-client privilege is narrowly construed because it "stands as an obstacle of sorts to the search for truth.").

Communications must "have been intended to be confidential and made for the purpose of giving or obtaining legal advice" to qualify as privileged. *City of Springfield v. Rexnord Corp.,* 196 F.R.D. 7, 9 (D.Mass. 2000). Documents that contain "information which is to be communicated to the public or others" are not protected. *Cavallaro,* 284 F.3d at 247 (disclosing attorney-client communications to a third party undermines the privilege); *Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 511 (D.N.H. 1996) (quoting *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 78 (S.D.N.Y. 1994)). *See also In re XYZ Corp.)*, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.").

An exception to the rule that disclosing attorney-client communications to a third party undermines the privilege is when third parties are employed to assist a lawyer in rendering legal

advice. *Cavallaro,* 284 F.3d at 247. Thus the attorney-client privilege extends to "all the persons who act as the attorney's agents." *Id.*, quoting *United States v. Kovel*, 296 F.2d 918, 921 (2nd Cir. 1961).

The attorney-client privilege extends to communications between corporate officers and in-house counsel, but the communications must relate to legal matters, not business strategy or negotiation. *See United States v. Windsor Capital Corp.*, 524 F.Supp.2d 74, 81 (D. Mass. 2007) (privilege does not apply when in-house counsel is engaged in nonlegal work which includes business or technical advice unrelated to any legal issues). Distinctions between legal work and business matters can be hard to draw. *Windsor*, 524 F.Supp.2d at 81. Communications retain their privileged status if relayed to other employees or officers of the corporation who need to know the information. When the communications are repeated to employees who do not need the information to carry out their work or make decisions, the privilege is lost.

The privilege applies to the communication itself, not the facts communicated. Facts gathered by counsel in the course of investigating a claim or preparing for trial are not privileged and must be divulged if requested in the course of discovery. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Opposing counsel is entitled to obtain through discovery the names of witnesses, facts underlying the cause of action, technical data, the results of studies, investigations and testing to be used at trial, and other factual information. *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Penn. 1997) (citing *Protective National Insurance Company of Omaha v. Commonwealth Insurance Company,* 137 F.RD. 267, 281 and 284 ) (D. Neb. 1989). "The inclusion of such information in documents prepared by, or circulated to, counsel does not render them inviolate on grounds of privilege." *Andritz Sprout-*

*Bauer*, 174 F.R.D. at 633.   *See Pacamore*, 918 F.Supp. at 511(attachments which are not otherwise privileged do not become so because they are attached to a communication with an attorney.)  However, documents sent to or prepared by counsel incorporating such information for the purpose of obtaining or giving legal advice, planning trial strategy, etc. are protected from compelled disclosure. *Andritz Sprout-Bauer*, 174 F.R.D. at 633. "To the extent that purely factual material can be extracted from privileged documents without divulging privileged communications, such information is obtainable." *Id.*

   B.  <u>Work-product privilege</u>

  The work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3), is intended to preserve a "zone of privacy" within which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *United States v. Textron, Inc. and Subsidiaries*, 577 F.3d 21, 25 (1st Cir. 2009).  Analysis of a case in anticipation of litigation is "a classic example of work product," *United States v. Adlman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998), *citing NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975).  Documents prepared by counsel, or at counsel's direction, in preparation for trial or in anticipation of litigation, are not discoverable absent a showing of substantial need, undue hardship, or inability to obtain their substantial equivalent by other means.  Fed.R.Civ.P. 26(b)(3).  Counsel's mental impressions and trial strategy "enjoy nearly absolute protection from disclosure" under this Rule. *Andritz Sprout-Bauer*, 174 F.R.D. at 634.

  "From the outset, the focus of work product protection has been on materials prepared for use in litigation, whether the litigation was underway or merely anticipated." *Textron*, 577 F.3d at 29.  "It is not enough to trigger work product protection that the *subject matter* of a document

relates to a subject that might conceivably be litigated.  Rather, as the Supreme Court explained, 'the literal language of [Rule 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Textron, id*, *quoting Federal Trade Commission v. Grolier, Inc*., 462 U.S. 19, 25 (1983) (emphasis in original).  Thus materials prepared in the "ordinary course of business," or "for other nonlitigation purposes" are not protected.  *Textron*, 577 F.3d at 30, *citing Hickman v. Taylor*, 329 U.S. at 510 n.9 (quoting English precedent that reports made in the "ordinary course of routine" are not privileged).

Parties are obliged to reveal to their opponents facts learned in preparing for trial.  So, for example, the names of witnesses and the existence of certain documents are discoverable.  What may not be obtained are written materials prepared by counsel or at the direction of counsel, such as "interview notes, correspondence, memoranda to the file or to the client or consultants on legal strategy, questions of law, etc., prepared 'with an eye toward litigation.'" *Andritz Sprout-Bauer, id.,* (quoting *Bogosian v. Gulf Oil Corp*., 738 F.2d 587, 592 (3rd Cir. 1984)).  As the Advisory Committee notes indicate,  Fed.R.Civ.P. 26(b)(3) "is intended to ratify the principles that 'each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side.'" *Adlman*, 134 F.3d at 1199, (quoting Advisory Committee notes).  So, for example, a study conducted at the behest of attorneys analyzing legal strategies and an assessment of the strategies' strengths and weaknesses "cannot be turned over to litigation adversaries without serious prejudice," *Adlman, supra* at 1200, (citing *Hickman*, 329 U.S. at 516 (Jackson, J., concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on

wits borrowed from the adversary.")

    II. The disputed documents.[1]

        A. Tab nos. 1 and 12, line nos. 257 and 1648

These are two email chains that were generated after in-house counsel for Defendants requested data from regional market partners at Texas Roadhouse so that he could analyze the data in preparation for litigation. The emails are privileged and the attachment, which consists of data generated at the request of counsel for his analysis, is as well.

        B. Tab nos. 2, 6, 8, and 15, line nos. 392, 1174, 1221, 1770

These are email chains that are the result of in-house counsel meeting with managers who wanted help in crafting a public relations statement about the litigation. The emails are privileged except for Tab 6, the email from Dave Dodson dated Monday, October 3, 2011. Tab 6 is not privileged as it was for release to all employees (recipients are directed to "inform your stores").

        C. Tab nos. 3 and 4, line nos. 599 and 600

These are emails concerning a request for information from counsel and an attachment that was generated at the request of counsel. The emails are privileged and the attachment is work product.

        D. Tab no. 5, line no. 1162

---

[1]There are sixteen tabbed emails, or email chains, some with documents attached. Closely-related documents are grouped together in the analysis that follows. They will be referred to both by the tab number in the Defendants' ex parte submission and by their "line number."

This is an email concerning changes that counsel was making to a document. The document has already been provided to the EEOC in discovery. The email and the document attached to the email, as it was undergoing review and was being edited by counsel, are privileged.

E. Tab nos. 7 and 13, line nos. 1199 and 1727

This is data that was generated on advice of counsel in anticipation of litigation and the emails and attachment are privileged.

F. Tab no. 9, line no. 1222

This is an email requesting that counsel review an attachment. The email and attachment are privileged. The attachment has already been provided to the EEOC and need not be provided to them again here.

G. Tab no. 10, line no. 1349

This is a draft of an op-ed where the author is seeking legal advice on the content. Defendants have agreed to provide the EEOC with a link to the final published version.

H. Tab no. 11, line no. 1394

This is an email where counsel is asking for certain documents that counsel wants to review in preparation for litigation. The documents were produced to the EEOC in discovery. The fact that counsel is asking for these particular documents at this certain time is privileged, so the attachment is privileged and need not be reproduced to the EEOC at this time.

I. Tab no. 14 and 16, no. 1729 and 1776

Tab no. 14, line no. 1729, is an employee's email requesting legal advice and is privileged. The attachment has already been provided to the EEOC and need not be produced

again in connection with this email.

Tab no. 16, line no. 1776, has to do with the retention of hiring documents.  Defendants have agreed that the email from Nicole Greene dated November 11 which begins "Hi Market Partners," will be provided to the EEOC without redaction.  The preceding email requests legal advice and is privileged.


                                                */s/ M. Page Kelley*
                                                *M. Page Kelley*
                                                *United States Magistrate Judge*