**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 1 : 11-CV-11732**

| | |
|---|---|
| | ) |
| EQUAL EMPLOYMENT OPPORTUNITY | ) |
| COMMISION | ) |
| | ) |
| Plaintiff**,** | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| TEXAS ROADHOUSE, INC., | ) |
| TEXAS ROADHOUSE HOLDINGS, LLC, AND | ) |
| TEXAS ROADHOUSE MANAGEMENT CORP., | ) |
| D/B/A TEXAS ROADHOUSE | ) |
| , | ) |
| | ) |
| Defendants. | ) |
| | ) |

**AMENDED EXPERT REPORT OF DAVID L. CRAWFORD, PH.D.**

## *INTRODUCTION*

1. My name is David Crawford.

2. I am an economist and the President of Econsult Corporation.

3. Econsult Corporation is an economic consulting and litigation support firm in Philadelphia, Pennsylvania. Since its founding in 1979, Econsult Corporation has had extensive experience in economic and statistical analyses in a wide range of cases including employment discrimination, wage and hour violations, personal injury, antitrust, infringement of intellectual property, and other commercial claims.

4. I have extensive experience as a consultant and expert witness on economic and statistical issues under the auspices of Econsult Corporation since 1979. Much of that experience has involved analysis of allegations of employment discrimination or wage and hour violations for both plaintiffs and defendants. I have testified in federal district courts, in administrative hearings before the U.S. Department of Labor Office of Administrative Law Judges, and in the state courts of New Jersey, New York, and Pennsylvania.

5. I received a Bachelor of Arts degree in economics from the University of North Carolina at Chapel Hill in 1971, and M.S. and Ph.D. degrees in economics from the University of Wisconsin in 1975 and 1979, respectively.

6. Exhibit 1 contains my Curriculum Vitae, which includes a list of my publications in the last 10 years, and a list of testimony appearances in the last 4 years.

7. My billing rate for all of my work on this project is $400 per hour. Support personnel are billed at lower rates.

8. My analyses are based upon my training and experience in economics and its application, my analysis of the materials listed in Exhibit 2, and the information received from Plaintiff's counsel as described herein.

9. This report is based on my analyses of the data currently available to me. If additional information becomes available, I may revise my analysis or perform additional analyses. The numbers and calculations contained in this report are

preliminary and may change based on decisions by the Court or jury later in this case. Additionally, both the volume of data underlying the calculations and time constraints imposed by the expert disclosure deadlines are considerable. While the methodology used to arrive at the calculations contained herein is sound and accurate, there is a possibility that mathematical or other technical errors may have occurred in performing the calculations. I will continue to review these calculations and, pursuant to Fed. R. Civ. P. 26(e), will supplement this report in a timely matter if I learn that in some material respect this report is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the Defendants.

10. This case was brought by the Equal Employment Opportunity Commission, on behalf of unsuccessful applicants age 40 years and older (the Protected Age Group or PAG) for front of the house (hereafter FOH) positions at a subset of Texas Roadhouse restaurants operating during the period January 1, 2007 through December 31, 2014.

11. The subset of Texas Road House restaurants relevant to this matter is identified in Excel file "TXRH1594635_Confidential store list.xlsx," which Christopher DeGroff has described as a list of stores that are "in scope."[1] It is my understanding that these restaurants are in scope because they were open and doing business sometime during the period January 1, 2007 through December 31, 2014 *and* were owned or managed by defendants Texas Roadhouse, Inc. and its wholly-owned subsidiaries[2]. Hereafter in this report, I shall use the word "stores" to describe the locations that are in scope, and I shall refer to the defendants as "TXRH."

12. According to the Amended Complaint, FOH positions include, but are not limited to, host/hostess, server, assistant server/service assistant, bartender, and bus person.[3] [4]

[1] Christopher DeGroff's email to Markus Penzel on May 26, 2015.
[2] Texas Roadhouse Holdings, LLC and Texas Roadhouse Management Corp.
[3] Amended Complaint, ¶ 28.

13. I was retained by the Equal Employment Opportunity Commission to
    a. Review data on successful and unsuccessful applicants for FOH positions;
    b. Review other relevant information and documents;
    c. Determine whether the hiring decisions made by TXRH during the period beginning January 1, 2007 through December 31, 2014 were age-neutral; and
    d. Estimate damages suffered by unsuccessful PAG applicants for FOH positions at TXRH during the period beginning January 1, 2007 through December 31, 2014.

## *DATA USED TO DETERMINE WHETHER HIRING DECISIONS WERE AGE NEUTRAL*

14. In this report, I discuss comparisons of TXRH FOH hiring data with 3 sets of benchmarks:
    a. Hires compared to Census Labor Force Data;
    b. Hires compared to Snagajob Applicant Pool;
    c. Hires compared to Paper Applicant Pool;

15. Some of the comparisons focused on the %PAG, the percentage of FOH hires who were in the PAG, individuals who were 40 years old or older on the day of hire.

16. To make the comparisons listed above, I worked with the following data:
    a. Electronic personnel data provided by TXRH to calculate the %PAG among the Hires (see ¶¶ 17-27);
    b. Data from the U.S. Bureau of the Census to estimate the %PAG of the available labor force (see ¶¶ 28-31);

---

[4] Throughout the remainder of this report and the accompanying tables, appendices, and exhibits the term "server" shall be considered interchangeable with "waiter/waitress" or waiters and waitresses; the term "assistant server/service assistant" shall be considered interchangeable with "server assistant," "bus/server assistant" and "bus/service assistant," and the term "host" is meant to include host and hostess.

c. TXRH data obtained from Snagajob to estimate the %PAG of TXRH applicants (see ¶¶ 32-37);

d. Image Files of Unsuccessful Paper Applications to estimate the %PAG of TXRH applicants (see ¶¶ 43-55); and

e. Supplemental Age Data from Accurint® (see ¶¶ 38-42).

**ELECTRONIC PERSONNEL DATA**

17. Electronic personnel data were provided by TXRH.[5] It is my understanding that those data included all people hired for FOH positions[6] during the period January 1, 2007 through December 31, 2014.

18. There were individuals who were included in the human resources table that could not be located in the payroll records. Such individuals were not counted as "hires" in any of my analyses. It could be argued that one should count offers of employment regardless of whether the offers led to actual employment. It would have been possible to count occasions when hire dates were set in the human resources table, but no wages were earned, but that is only one type of "offer." Another type of offer would have been an occasion on which an offer was made but no hire date was recorded, which could have happened if an oral offer was declined during an interview. Because TXRH stores did not systematically keep applicant logs, it was not possible to count such occasions, so it was not possible to get a meaningful count of "offers."

[5] Those data were received in Excel files with names:
TXRH2410599_Confidential_Emphcomp; TXRH2410600_Confidential_Iemppers;
TXRH2410601_Confidential_Ipearhist; TXRH2410602_Confidential_PayRegpData; TXRH2410603 and.
TXRH2410604_Confidential_Person.

[6] TXRH2410595.xls is a list of job codes that are assigned a status of Included or Excluded. Job titles that are "included" were identified as being FOH.

19. I extracted the following fields from the electronic personnel data:

a. Name;

b. Date of Original Hire;

c. Date of Last Hire;

d. Date of Birth;

e. Pay Date;

f. Job Code;

g. Hire Location;

h. Date in Job;

i. EEID; and

j. Person ID

20. I used the Job Code listed on the earnings history spreadsheet to identify the hire position when available to identify FOH positions. The earliest position listed (based on pay date) was used as the hire position unless the position was a trainee. When an individual had "trainee" listed as the first position, the next earliest position (when available) was selected. That process continued until a position other than trainee was observed. If an individual had more than one position on the first non-trainee pay then all positions listed were captured. The FOH positions appearing in the data and the position category to which each hire was assigned were:[7]

a. Position titles FOODRAM, FOODRUNN, FRNTS, GAMESERV, HEADWAIT, SERBRNTS, SERVAM2, SERVERAM, SERVERS, TEAMSERV, YFOODRUNN and YSERVER which were assigned to the server (waiter and waitress) category.[8]

b. Position titles BARBACK, BARBKNTS, FOHUTILT, SANTS, SERASSIS, SILVER, YFOHUTIL, YSERVAST, and YSILVER which were assigned to the bus/server assistant category;[9]

---

[7] TXRH2410595.xls lists the job codes that are FOH as included and those that are not FOH as excluded.

[8] Email from Jason Priebe on February 10, 2016 lists the corresponding job descriptions as Food Runner – AM, Food Runner – PM, Gaming Server, Headwait, Server, Server – AM, Server – PM, Team Serve, Youth Food Run, and Youth Server.

[9] Email from Jason Priebe on February 10, 2016 lists the related job descriptions as FOH Utility, Service Assistant, Silver Roller, Youth Server Assistant, Team Serve, Youth Food Run, and Youth Silver Roller.

c. Position titles COUNTER, COUNTERLTD, HOST, HOSTAM, HOSTE, HOSTNTS, TOGOHOST, YHOST, and YHOSTES which were assigned to the host and hostess category;[10]

d. Position titles BARAM, BARNTS, BART, BARTENAM, and BARTENDE which were assigned to the bartender category;[11]

e. Position titles BAKER, BOHCOOR, BOHEVENT, BOHTRANR, BOHTRNE, BOHUTILT, BOHVAC, BROIL, CLEANING, CNTST, COLDPREP, CORTRAIN, DISHWASH, EXPOS, FRY, GIFTCARD, HOTPREP, LSM, MEATCUTT, MEETING, MENTOR, OFFICE, POINT, PUSHCOOK, RIBCOOK, SALAD, TIP, TIPSH, and YMEETING were dropped because they are not front of the house positions.[12]

21. Two additional position categories were created for positions assigned to hires.

a. Position titles TRAINEE, TRAINING, and YTRAINEE[13] were assigned to the TRAINEE category if that was the only position ever listed. I included these cases in the analysis of the aggregation of all FOH hires, but not in the analysis of specific positions.

b. Position title BRTRAINR, FOHCOOR, FOHEVENT, FOHVAC, FRTRAINR, HSTRAINR, KEYHRLY, SATRAINR, UNKNOWN, and YTRAINER[14] were assigned to the unknown category. These were included in the cases in the analysis of the aggregation of all FOH hires, but not in the analysis of specific positions.

---

[10] Email from Jason Priebe on February 10, 2016 lists the related job descriptions as Counter, Host-PM, Host- AM., Host Host/Hostess, Youth PM Host, Youth AM Host.

[11] Email from Jason Priebe on February 10, 2016 lists the related job descriptions as Bartender – AM, Bar, Service Bar, and Bartender – PM.

[12] Email from Jason Priebe from February 10, 2016 lists the related job descriptions as Baker, BOH Train Coord, BOH Special Event, BOH Trainer, BOH Trainee, BOH Utility, Broil, Cleaning, Cold Prep, Corporate Trainer, Dishwasher, Expo, Fry, Gift Card Sales, Hot Prep, LSM, Meat Cutter, Meeting, Marketing Mentor, Office, Point, Push Cook, Rib Cook, Salad, and Youth Meeting.

[13] Email from Jason Priebe on February 10, 2016 described these job codes as Trainee, Training, and Youth Trainee.

[14] Email from Jason Priebe on February 10, 2016 lists the job descriptions for these positions as FOH Train Coordinator, FOH Special Event, Key Hourly, and Youth Trainer.

22. The electronic personnel data contained a total of 181,583 *hires* during the period January 1, 2007 through December 31, 2014 for FOH positions at in scope stores.[15] The distribution of those hires across positions and store-years[16] is shown in Table 2. The distribution across positions for all years combined was[17]:

a. Server – 142,325 (78.38%);

b. Bus/Server Assistant – 40,432 (22.26%);

c. Host – 52,801 (29.07%);

d. Bartender – 1,524 (0.84%);[18]

e. Trainee – 12,002 (6.61%); and

f. Unknown – 1,419 (0.78%).

23. The personnel data contained the dates of birth for all individuals who were hired (those who actually began working). 1.62% of those individuals were 40 years of age or older as of their hire dates. The analogous percentages for each position for all years combined were:

a. Server – 1.49% 40 years of age or older;

b. Bus/Server Assistant – 1.85% 40 years of age or older;

c. Host – 0.28% 40 years of age or older;

d. Bartender – 3.08% 40 years of age or older;

e. Trainee – 2.65% 40 years of age or older; and

f. Unknown – 5.21% 40 years of age or older.

24. Table 3 shows the percentages of hires who were 40 years of age or older by position, store, and year. At the bottom of Table 3, I have displayed the percentages

---

[15] TXRH2410597_Confidential_Company.xls

[16] Data for a store-year is data for a particular store in a particular year. Store X can have as many as 8 store-years of data: X-2007, X-2008, X-2009, X-2010, X-2011, X-2012, X-2013, and X-2014. Store Y can also have as many as 8 store-years of data: Y-2007, Y-2008, Y-2009, Y-2010, Y-2011, Y-2012, Y-2013, and Y-2014. So, 100 stores could have data for as many as 800 (100 times 8) store-years.

[17] Often, the first pay record was associated with more than one job category. When an individual had more than one job category listed in the first non-trainee pay, they were counted in both specific groups and once in the overall number of hires. This means that these percentages will not sum to one.

[18] This share is low because few are newly hired into TXRH bartender positions. Most bartenders are promoted/transferred from other TXRH positions.

of hires who were 40 years of age or older by position and year (aggregating over stores).

25. The 2007-2009 and 2011-2014 shares of *hires* of those who were 40 years of age or older for each position are:

a. 1.16% and 1.78% for waiters and waitresses (difference of 8.8 standard deviations);
b. 1.86% and 1.87% for bus/service assistants (difference of 0.1 standard deviations);
c. 0.20 % and 0.34% for hosts and hostesses (difference of 2.8 standard deviations); and
d. 2.49% and 3.29% for bartenders (difference of 0.9 standard deviations).

The differences are consistent with the hypothesis that that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010.

26. The 2007-2010 and 2012-2014 percentage shares of *hires* for each position are:

a. 1.17% and 1.90% for waiters and waitresses (difference of 10.5 standard deviations);
b. 1.81% and 1.98% for bus/service assistants (difference of 1.2 standard deviations);
c. 0.22% and 0.33% for hosts and hostesses (difference of 2.5 standard deviations); and
d. 2.91% and 3.04% for bartenders (difference of 0.1 standard deviations).

The differences are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

27. Later in this report (see ¶¶ 61-96), I present and discuss the comparisons of the %PAG among the hires to the 3 benchmarks listed in ¶ 14.

## DATA FROM THE U.S. BUREAU OF THE CENSUS

28. A set of data on the PAG shares of labor forces in various locations was obtained from the U.S. Bureau of the Census. The EEO Tabulation 2006-2010 contains age distributions of the labor forces in particular occupations in particular geographic areas. The occupational data are more detailed for areas with larger populations.

29. I used the zip codes of each TXRH store address to assign each store to a Core Based Statistical Area (CBSA)[19] defined by the U.S. Census Bureau.[20] [21] [22] I was able to assign 368 of the 396 "in scope" stores to a unique CBSA. 25 of the zip codes areas of "in scope" stores were each split across 2 CBSAs, and the remaining 3 of the zip codes of "in scope" stores were each split across 3 CBSAs. In all 28 cases of multiple CSBA matches, I used the street addresses of the stores to choose unique CSBAs. CBSA %PAGs for waiters and waitresses[23], other food preparation and serving related workers[24], hosts and hostesses[25], and bartenders[26], are available for 27, 27, 27, and 28 of those 28 stores, respectively.

---

[19] The U.S. Bureau of the Census defines metropolitan statistical areas, micropolitan statistical areas, and core based statistical areas as follows:

> Metropolitan and micropolitan statistical areas (metro and micro areas) are geographic entities delineated by the Office of Management and Budget (OMB) for use by Federal statistical agencies in collecting, tabulating, and publishing Federal statistics. The term "Core Based Statistical Area" (CBSA) is a collective term for both metro and micro areas. A metro area contains a core urban area of 50,000 or more population, and a micro area contains an urban core of at least 10,000 (but less than 50,000) population. Each metro or micro area consists of one or more counties and includes the counties containing the core urban area, as well as any adjacent counties that have a high degree of social and economic integration (as measured by commuting to work) with the urban core. (http://www.census.gov/population/metro/)

[20] Because zip code areas seldom cross CSBA boundaries, there is no need to use street addresses rather than zip codes for the 368 of 396 stores. Since address matching is much more difficult, it makes sense to try zip code matching first.

[21] Assignments to CBSAs were based on a crosswalk obtained from the Missouri Census Data Centers Geographic Correspondence Engine (http://mcdc.missouri.edu/websas/geocorr12.html).

[22] The zip code information on the store list for Stores 72 and 327 was incorrect. I used the United States Postal Service zip code look up and made the appropriate changes in the zip codes before using the crosswalk. The address of Store 477 was not on the store list, so I found the address (including zip code) on the TXRH website before using the crosswalk. The zip code of the Taylorsville, UT store (84129) was not included in the crosswalk because it was a new zip code. I determined the old zip codes before using the crosswalk to obtain the CSBA. (http://www.deseretnews.com/article/705375487/Taylorsville-gets-new-ZIP-code.html?pg=all)

[23] 2010 EEO Occupation Code 4110

[24] 2010 EEO Occupation Code 4130

30. I also used the zip code of the store address to assign each TXRH store to a county.[27] For each store in a CBSA for which data were not available, I used the %PAGs for the county in which the store was located, where available. The county data were used to fill in missing CBSA data for waiters and waitresses, other food preparation and serving related workers, hosts and hostesses, and bartenders for 1, 1, 1 and 1 of the stores, respectively. The combination of CBSA and county data, therefore, provided data for 370, 370, 370, and 369 of the stores, respectively. I used those data as benchmarks for the %PAGs of TXRH hires of waitresses and waiters, bus/server assistants, hosts and hostesses, and bartenders, respectively.

31. The combined CBSA and county %PAGs for TXRH stores for waiters and waitresses, all other food preparation and serving related workers, hosts and hostesses, and bartenders are shown in Table 4, columns B, C, D, and E, respectively. Cells that are grey indicate that the %PAG is not available for that store and position. When data are available for all four positions, the weighted averages of the four percentages for each store are shown in column A of Table 4.

## SNAGAJOB DATA

32. Snagajob is an independent company that offers a proprietary internet job application system used by some TXRH stores in some years. It is my understanding that TXRH instructed Snagajob to provide all of the TXRH application data in its possession to me. I was provided Snagajob data for 963 (37.0% of the 2,630) in scope store-years.[28] [29]

---

[25] 2010 EEO Occupation Code 4150
[26] 2010 EEO Occupation Code 4040
[27] Assignments to counties were based on the crosswalk obtained from the Missouri Census Data Centers Geographic Correspondence Engine (http://mcdc.missouri.edu/websas/geocorr12.html).
[28] Store-years were considered in-scope if the store opened within one year, the year did not fall on or before a franchise roll-up, and the year did not occur after a store closed.
[29] Individual Snagajob application data was received as either a JSON file or an XML file in TXRH0719372 and TXRH0639748. Snagajob data was received as an excel file. These data were initially received in 4 Excel files with names SubpoenaInfo_TexasRoadhouse_Mongo(2013), SubpoenaInfo_TexasRoadhouse_Mongo(Feb 2015),

33. Fewer stores used the Snagajob system in the earlier years. Snagajob data were available for 10%, 23.5%, 9.9%, 6.4%, 5.9%, 11.2%, 94.4%, and 100% of stores in 2007, 2008, 2009, 2010, 2011, 2012, 2013, and 2014, respectively. The much lower percentages in the early years argue against using *only* Snagajob data to analyze the hiring behavior of TXRH over the 2007-2014 period and argues in favor of using the data from Census and the paper applications as well as the data from Snagajob.

34. The following information was extracted from the Snagajob data:

a. Applicant's name

b. Applicant's address;

c. Date of birth (when available)

d. Position desired;

e. Location Preference; and

f. Date of Application.

35. I matched the Snagajob data with the electronic personnel data to determine whether a Snagajob application was successful or unsuccessful. The distribution of *unsuccessful* Snagajob applications across store-years is shown in Table 5. The distribution of *successful* Snagajob applications across store-years is shown in Table 6.

36. The Snagajob data contained the dates of birth for 314,771 of 353,255 applicants. Further, we were able to fill-in missing dates of birth for 32,827 of 38,484 records with missing dates of birth by using the supplemental age data (See ¶ 38-42 for a discussion of how supplemental age data from Accurint® was used for records with missing dates of birth). 4.9% of unsuccessful Snagajob applicants were 40 years of age or older when they applied. The analogous percentages for each position were:

a. Server – 4.4% 40 years of age or older

SubpoenaInfo_TexasRoadhouse (March 2015),SubpoenaInfo_TexasRoadhouse (May 2015), SubpoenaInfo_TexasRoadhouse_SQL (2013), SubpoenaInfo_TexasRoadhouse_SQL (May 2015). Additional date of birth information was included in excel file TXRH2401554_CONFIDENTIAL.

b. Bus/Server Assistant – 3.5% 40 years of age or older

c. Host – 3.7% 40 years of age or older

d. Bartender – 6.2% 40 years of age or older

37. Table 7 shows the percentages of unsuccessful Snagajob applicants who were 40 years of age or older by position, store, and year.

## SUPPLEMENTAL AGE DATA

38. The personnel data contained the dates of birth for almost all successful applicants, but neither date of birth nor age was available from some of the Snagajob records and most of the unsuccessful application images.

39. Whenever date of birth information was not available in any of those sources, I wanted to use identification information from the electronic personnel data, the Snagajob data, and unsuccessful application images to obtain supplemental information on dates of birth from Accurint®.[30]

40. To explore the completeness and accuracy of the birthdate data collected by Accurint®, I selected 8 random samples (1 for each year 2007 through 2014) of 40 individuals hired into FOH positions for whom dates of birth were available in the personnel data. I requested dates of birth from Accurint® based on identification information from the personnel data and looked to see how closely the dates of birth provided by Accurint® matched up with the dates of birth that I already had from the personnel data[31]. Accurint® found full birthdates (month, date, and year) for 250 of the 320 individuals in the samples and useful partial birthdates (month and/or date

[30] Accurint® is part of LexisNexis®.

[31] The relevant employee information was pulled from previously provided employee records, TXRH0719380 - Confidential - Supp. Response Int No. 3_FOHWithDOB.xls and TXRH0719381 - Confidential - Supp. Response Int No. 3_FOHWithPosition, since it included address information that was not found in the most recent production of personnel data.

missing) for another 19 individuals.[32] The percentages of individuals in the 8 samples for whom full or useful partial birthdates were found ranged from 72.5% to 92.5% with an overall percentage of 84.1%.

41. When I compared the %PAG of the 269 individuals for whom full or partial birthdates were found with the %PAG of the 51 individuals for whom full or partial birthdates were not found, I found that the %PAGs were .74 % and 1.96%, respectively. The t-statistic for the difference between the two %PAGs was .83 standard deviations implying that there was no significant difference between them. This result allays concerns that %PAGs based on Accurint® data might be biased due to individuals not being found. The result does not, however, mean that there is no need to consider data from the U.S. Census because the Census data will support more powerful statistical tests.[33]

42. 239 of the 250 full dates of birth returned by Accurint matched the dates of birth in the personnel data. Of the remaining 11 full dates that did not match, Accurint returned 7 that occurred prior to the date of birth reported in the personnel data and 4 that occurred after the date of birth reported in the personnel data. All partial dates of birth matched on the non-blank values. (For example, one date of birth that Accurint® returned was 0/0/1989, for an individual whose actual birthdate was 7/15/1989.) Combining complete and partial birthdates, 80.6% of the Accurint® birthdates were accurate. I see no reason to expect that inaccuracies in the Accurint® birthdates impart a bias to the calculated %PAGs. As noted in the previous

[32] Partial birthdates could be used as long as the year was available by assuming that all missing months were December and all missing days were the last day of the month. Doing so created a small downward bias in calculated ages that in turn created a small downward bias in the benchmark %PAG which created a small advantage for Defendant.

[33] When statisticians evaluate statistical tests, they usually consider two issues: the unbiasedness of the test and the power of the test. A test is unbiased if the test statistic (here a t-statistic) is just as likely to be too high as it is to be too low, so it will be accurate "on average." A test statistic will be unbiased if it is based on a "representative" sample, and a "representative" sample can be much smaller than the full population. The power of a test is high if the test statistic is likely to be close to the true value, regardless of whether it's too high or too low in a particular instance. Power is about precision, not bias. In this context, power is formally defined as the probability of a test finding discrimination when discrimination really exists. You could have an unbiased test based on a tiny sample, but it would have no power. Generally, larger samples yield more powerful tests, which is why one should use the Census data even if the paper application data is expected to support unbiased tests.

paragraph, the expected unbiasedness of tests based in part on Accurint® data does not mean that there is no need to consider data from the U.S. Census because the Census data will support more powerful statistical tests.[34]

**UNSUCCESSFUL PAPER APPLICATIONS**

43. TXRH provided image files[35] of all of the allegedly unsuccessful paper applications that it was able to locate.[36] (An unsuccessful application is one that did not lead to a hire. [37]) TXRH represented that it was not able to provide all of the unsuccessful applications because not all of them were retained. Before the current suit was brought, there was no corporate oversight regarding retention of unsuccessful applications and the retention process, if any was left to local managers.

44. Because of the absence of corporate oversight regarding retention of unsuccessful applications and the retention process and the obvious holes in the production of these applications, there is uncertainty as to whether the available unsuccessful paper applications are representative of the full population of unsuccessful paper applications. That uncertainty argues against using *only* paper application data to analyze the hiring behavior of TXRH over the 2007-2014 period and argues in favor of using the data from Census and Snagajob as well as the data from the unsuccessful paper applications.

[34] See previous footnote.
[35] The importance of the applications coming in image files was that application data had to be keyed before they could be analyzed electronically.
[36] These images were initially received in tiff image files: TXRH0003698-TXRH0238261, TXRH0239153-TXRH0639747, TXRH0639759-TXRH0719371, TXRH0721029-TXRH1594360, TXRH2290535-TXRH2297847, TXRH2401007-TXRH2401169, TXRH2401794-TXRH2404520, TXRH2404522-TXRH2405447, TXRH2410689-TXRH2412133, and TXRH2412134- TXRH2416135
[37] Some of the purportedly unsuccessful paper applications are those of applicants who were offered positions but never completed training. There is no way to identify such applications because there are no electronic personnel records for such people and there was no other systematic tracking of such people.

45. For the unsuccessful applications that TXRH did retain and produced by August 31, 2015[38], the application dates, names, and Bates numbers were keyed from the application images.[39]

46. 342,053 of the unsuccessful application images were for stores that were in scope during the period 2007 to 2014. An additional 21,583 images were for stores that transitioned from franchise locations to in scope locations between 2007 and 2014. The 84 stores that were never in scope during the period 2007 to 2014 were excluded from all of my analyses.

47. Application dates and Bates numbers were used to count the unsuccessful application images for each store and year.[40] There were data for one or more years for 355 different stores and 8 different years. 1,797 store-years were represented in the data. The numbers of unsuccessful applications for each store-year are displayed in Table 9.

48. In order to control the cost of this litigation, I selected a random sample of store-years from the subpopulation of 1,693 store-years for which:

a. The store did not transition from a franchise to an in scope store during the year.

b. There were 1 or more hires; and

c. There were 1 or more paper applications.

---

[38] Email from Christopher DeGroff to Markus Penzel on August 8, 2015.

[39] Because of the cost of checking the name and address data keyed from each of so many application images, there are errors in the keyed data on name and address. Those errors surely reduced the percentage of individuals for whom birthdates were found by Accurint®.The reader will recall that when I compared the %PAG of the 269 individuals in a random sample for whom full or partial birthdates were found with the %PAG of the 51 individuals in the sample for whom full or partial birthdates were not found, there was no significant difference between them. This result allays concerns that %PAGs based on Accurint® data might be biased due to individuals not being found.

[40] Counts were based on a concordance of Bates numbers. The concordance files are Store_to_Bates_Index, TXRH1566522-1594633_DATFILE.csv, TXRH2290535_TXRH2401169.txt, TXRH2404522_TXRH2405447.txt, TXRH2401794_TXRH2404520_storelist.txt, TXRH240241_TXRH2410378_storelist.txt, TXRH2407604_TXRH2410240_storelist.txt, TXRH2407025_TXRH2407603_storelist.txt, TXRH2412134_TXRH2416135_storelist.txt, TXRH2410689_TXRH2412133_storelist.txt.

49. I selected a random sample of 321 of the 1,693 store-years.[41] The selected store-years are indicated by **bold font** in Table 9. There were 70,346 image files for the 321 selected store-years. 80 of the 70,346 image files were not applications,[42] so there were image files of 70,266 applications.

50. In addition to name and Bates number, which had already been keyed, the following information was keyed from the 70,266 unsuccessful applications for the 321 selected store-years:

a. Applicant's Name;
b. Applicant's address;
c. Social Security number (when available);
d. Position desired;
e. Indicator of age greater than or equal to 18;
f. Indicator of felony conviction; and
g. Applicant's comment on felony conviction.

51. The majority of applications had 9 position check boxes indicating types of positions that applicants could seek (food server, bartender, host/hostess, dish machine operator, server assistant, food prep/line cook, food runner, meat cutter and baker). The position indicated in the chosen check boxes and any other notes that were in the general area of the position sought for section of the application were coded. Under my direction and supervision Econsult personnel determined which position or positions (including "any," "all," and "none") were sought in each application.

52. There were 1,488 unsuccessful applications that were determined to be for non-FOH positions. An individual was considered a non-FOH applicant if they applied for only a non-FOH position. The non-FOH positions that applicants indicated on their application were baker, meat cutter, dish machine operator, line cook/food prep,

[41] Random sampling was done with the software STATA.Prior to running the sample command, the seed was set as 80471921, the serial number on a dollar bill.
[42] The image files were interview questionnaires.

BOH (back of the house), local store marketing, management, administrative/office, and expo.

53. The paper applications did not contain dates of birth for the unsuccessful FOH applicants. I was able to fill in missing dates of birth for 51,730 out of the remaining 68,788 (75.2%) records in our sample by using the supplemental age data from Accurint® [43] [44] After the search was complete, Accurint® returned partial or complete dates of birth for 51,730 (three quarters of the) applications. Partial (missing day and/or) dates of birth were returned for 4,017 of these applications.[45]

54. 7.1 % of those 51,730 individuals were 40 years of age or older when they applied. The analogous percentages for each position were:

a. Server – 7.3 % 40 years of age or older
b. Bus/Server Assistant – 6.9 % 40 years of age or older
c. Host – 4.8% 40 years of age or older
d. Bartender – 8.9% 40 years of age or older

55. Table 10 shows the percentages of paper applications for unsuccessful applicants who were 40 years of age or older by position, store, and year.

---

[43] See ¶¶ 39-42 for a discussion of how Accurint® data were used for Snagajob records with missing dates of birth. As in the case of the Snagajob data, I see no reason to expect that inaccuracies in the Accurint® birthdates impart a bias to the calculated %PAGs calculated from the unsuccessful paper application augmented with Accurint® data. If there were such a bias, however, it would argue in favor of using the data from Census as well as the data from the unsuccessful applications.

[44] For each record submitted to Accurint® for the date of birth search, the following information was submitted: Last Name, Middle Initial, First Name, Street Address 1, City, State, Zip and Social Security Number (where available).

[45] The 75.2% figure is somewhat lower than the 84.1% hit rate for the random sample of 321 store years that I discussed above.

## *RESULTS OF COMPARISONS OF HIRES TO 3 BENCHMARKS*

56. In the next 3 sections of this report, I present the comparisons of TXRH FOH hiring data with the 3 sets of benchmarks discussed in ¶¶ 14:

    a. %PAG among Hires compared to % PAG in Census Labor Force Data;

    b. %PAG among Hires compared to %PAG in Snagajob Applicant Pool;

    c. %PAG among Hires compared to %PAG in Paper Applicant Pool;

57. In interpreting the results of all these groups of tests, it is important to note that the actual %PAG of TXRH hires of any particular position for any particular store is very unlikely to match any benchmark exactly. Just because the actual %PAG of hires is lower than a particular benchmark, one would not jump to the conclusion that there was discrimination in hiring. The important question is whether the difference between the two percentages is large enough that it would have been unlikely to occur by chance. In the language of statistics, the question of statistical significance is whether the difference between the two measured percentages is large enough to conclude that the difference did not occur by chance. The significance level of a statistical test is the probability that the actual test result or a more extreme result could have occurred by chance. Frequently discussed benchmarks for statistical significance are 5% (1 out of 20) and 1% (1 out of 100). When the level of significance is X%, one says that the result is statistically significant at the X% level. If a difference is found to be significant only at a level higher than 5%, most analysts will not take the test as strong evidence of a real difference.

58. Frequently discussed benchmarks for statistical significance in employment discrimination litigation are discrepancies of 2 or 3 standard deviations in tests based on the normal distribution.[46] The normal distribution implies a particular

[46] The normal distribution is characterized by the well-known "bell curve." Many, but not all, statistical tests are based on the normal distribution (or the very closely related t distribution). Such tests include most tests of means and regression coefficients that are commonly used in the courts.

correspondence between standard deviations and statistical significance. If a sample mean or an estimated regression coefficient is at least 2 standard deviations *above or below* a hypothesized value, then the difference is statistically significant at a 4.55% level of significance in a two-tailed test; that is, the probability that a deviation of plus or minus 2 or more standard deviations would occur by chance is 4.55% or approximately 1 out of 22. In a two-tailed test one assumes that the true value of a parameter can be *greater than or less than* some hypothesized value. For example, if one tested equal proportions against two possibilities, that the %PAG is higher among TXRH hires or that the %PAG is lower among TXRH applicants, it would be a two-tailed test. Alternatively, if one tested equal proportions against one possibility that the %PAG is lower among actual TXRH hires, it would be a one-tailed test. Because the normal distribution is symmetric, the one-tail probability that a deviation of plus 2 or more standard deviations would occur by chance is one-half of 4.55% or 2.275%, the same as the one-tail probability that a deviation of minus 2 or more standard deviations would occur by chance. A deviation of plus or minus 3 or more standard deviations would imply a level of statistical significance of 0.27% in a two-tailed test; that is, the probability that a deviation of plus or minus 3 or more standard deviations would occur by chance is 0.27% or 1 out of 370. The one-tail probability that a deviation of plus 3 or more standard deviations would occur by chance is one-half of 0.27% or 0.135%.

59. My analyses of groups of all store-years that have any actual hires of a particular position type (waiters and waitresses, bus/service assistants, hosts and hostesses, bartenders, or all FOH personnel) and benchmark data for that store-year and position type are based on the Mantle-Haenzel test[47], which combines comparisons of %PAGs of actual hires and benchmark data across individual store-years. My

[47]The Mantel-Haenzel test is discussed by Gastwirth (Joseph Gastwirth, "Statistical Methods for Analyzing Claims of Employment Discrimination, Industrial and Labor Relations Review, Vol. 38, No. 1, October 1984) among others. In this application, the test combines information from a number of 2 by 2 tables in which the dimensions are Actual versus Benchmark and 40 or Older versus less than 40. In this application, the number of tables is the number of store-years.

analyses of groups of store-years that have large numbers[48] of hires of a position type and benchmark data based on large numbers of individuals are based on standard t-tests of the equality of sample proportions for each store-year, which I summarize in 3 standard binomial tests of the number of those t-statistics that are positive, larger than 2 standard deviations, and larger than 3 standard deviations.

60. For each of the 3 benchmarks discussed in the next 3 sections, I present the comparison of %PAG Hires into each of the four positions – servers, bus/server assistants, host/hostesses, and bartenders and a fifth aggregated group of all FOH positions. The aggregation allows me to include a substantial number of people whose personnel records, Snagajob records, or paper application do not indicate a particular position.

## %PAG AMONG HIRES COMPARED TO %PAG IN CENSUS LABOR FORCE DATA

61. *Waiter/Waitress position* - For each of the 1,981[49] store-years with 30 or more TXRH hires of waiters and waitresses, I tested the equality of the U.S. Census %PAG of waiters and waitresses and the %PAG of TXRH hires of waiters and waitresses using the normal approximation to distribution of the difference. I computed the difference between the two %PAGs, measured in standard deviations of the difference. A positive difference indicates that the U.S. Census %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the U.S. Census %PAG is smaller than the %PAG of TXRH hires. The differences, from each comparison are displayed in Table 11. Those results, which are summarized in the top tableau of Table X-W, can be described as follows:

[48] Large numbers are assumed to begin at 30 hires.
[49] The number of store-year comparisons used in a particular test will vary across different time periods (i.e., 2007-2014, 2007-2009, 2011-2014, 2007-2010, and 2011-2014).

a. For 1,979 of the 1,981 (99.9%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations.[50] [51]

b. For 1,864 of the 1,981 (94.1%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

c. For 1,688 of the 1,981 (85.2%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 673 of the 673 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[52]

    ii. For 651 of the 673 (96.7%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters

---

[50] The probability of more than 7 standard deviations is so miniscule that some computer programs return a zero as the probability that a standard normal random variable is greater than 7, while others return a number slightly larger than zero. The standard deviations corresponding to a true zero would be infinite, but the probability of 7 standard deviations is not a true zero. Practically, once you get as far out as more than 7 standard deviations, there is no point in worrying about whether it is actually more than 8. Statisticians would agree that the difference does not matter in any real-world context. Because computers struggle with more than 7 standard deviations (depending on the program), in this report I have displayed any number greater than 7 standard deviations as simply "more than 7 standard deviations." The probability that standard normal random variable is greater than 7 is approximately zero, so it is reasonable to just say "more than 7 standard deviations" and be done with it. There is no practical difference between more than 8 standard deviations and more than 7 standard deviations. Reporting 8 standard deviations rather than "more than 7" would be like pointing out that the age of the universe is 14,000,000,001 years old instead of 14,000,000,000 years old. No calculation is that precise, so it makes no sense to point out the difference.

[51] By simple subtraction it follows that, for 2 of the 1,981 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[52] By simple subtraction it follows that, none of the 673 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 600 of the 673 (89.2%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

i. For 1,059 of the 1,061 (99.8%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[53]

ii. For 980 of the 1,061 (92.4 %) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 877 of the 1,061 (82.7%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 920 of the 920 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and

[53] By simple subtraction it follows that, for 2 of the 1,061 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[54]

ii. For 884 of the 920 (96.1%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 811 of the 920 (88.2%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 788 of the 790 (99.7%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[55]

ii. For 727 of the 790 (92.0%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 647 of the 790 (81.9%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that

[54] By simple subtraction it follows that, for none of the 920 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[55] By simple subtraction it follows that, for 2 of the 790 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

62. The results described in ¶¶ 61.d. and 61.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 61.f. and 61.g. are also consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case, which was in 2011.

63. _Bus/Service Assistant position_ - For each of the 195[56] store-years with 30 or more TXRH hires of bus/service assistants, I tested the equality of the U.S. Census %PAG of bus/service assistants and the %PAG of TXRH hires of bus/service assistants using the normal approximation to distribution of the difference. I computed the difference between the two %PAGs, measured in standard deviations of the difference. A positive difference indicates that the U.S. Census %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the U.S. Census %PAG is smaller than the %PAG of TXRH hires. The differences, from each comparison are displayed in Table 12. Those results, which are summarized in the top tableau of Table X-BUS, can be described as follows:

   a. For 195 of 195 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/service assistants were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations.[57] [58]

   b. For 174 of 195 (89.2%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more 7 standard deviations or more than 1 in 781,000,000,000.

[56] The number of store-year comparisons used in a particular test will vary across different time periods (i.e., 2007-2014, 2007-2009, 2011-2014, 2007-2010, and 2011-2014).
[57] The content of the footnote is blank. The footnote number is left in this document to maintain the numbering of the original submission.
[58] By simple subtraction it follows that, for none of the 195 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

c. For 158 of 195 (81.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

   i. For 109 of 109 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/service assistants were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[59]

   ii. For 93 of the 109 (85.3%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

   iii. For 88 of 109 (80.7%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

   i. For 76 of the 76 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[60]

[59] By simple subtraction it follows that, for none of the 109 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[60] By simple subtraction it follows that, for none of the 76 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

ii. For 72 of 76 (94.7%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 63 of 76 (82.9%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 119 of 119 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[61]

ii. For 102 of 119 (85.7%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 95 of 119 (79.8%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

---

[61] By simple subtraction it follows that, none of the 119 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

g. When the analysis was restricted to the 2012-2014 period,

i. For 59 of the 59 (100.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[62]

ii. For 55 of the 59 (93.2%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 47 of the 59 (79.7%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

64. The results described in ¶¶ 63.d. and 63.e are not entirely consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 63.f. and 63.g. are not entirely consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case, which was in 2011.

65. *Host/hostesses position* - For each of the 409[63] store-years with 30 or more TXRH hires of host/hostesses, I tested the equality of the U.S. Census %PAG of host/hostesses and the %PAG of TXRH hires of host/hostesses using the normal approximation to distribution of the difference. I computed the difference between

---

[62] By simple subtraction it follows that, for none of the 59 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[63] The number of store-year comparisons used in a particular test will vary across different time periods (i.e., 2007-2014, 2007-2009, 2011-2014, 2007-2010, and 2011-2014).

the two %PAGs, measured in standard deviations of the difference. A positive difference indicates that the U.S. Census %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the U.S. Census %PAG is smaller than the %PAG of TXRH hires. The differences, from each comparison are displayed in Table 13. Those results, which are summarized in the top tableau of Table X-HOST, can be described as follows:

a. For 358 of 409 (87.5%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations.[64] [65]

b. For 187 of 409 (45.7%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 1 in 781,000,000,000.

c. For 125 of 409 (30.6%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 183 of 208 (88.0%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[66]

    ii. For 109 of 208 (52.4%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the

[64] The content of the footnote is blank. In the original document footnote number 63 was missing. Because a footnote was added the missing footnote is now number 64. The footnote number is left in this document to maintain the numbering of the original submission.

[65] By simple subtraction it follows that, for 51 of the 409 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[66] By simple subtraction it follows that, for 25 of the 208 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 71 of 208 (34.1%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

i. For 153 of the 175 (87.4%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[67]

ii. For 66 of 175 (37.7%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 47 of 175 (26.9%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 205 of the 234 (87.6%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age

[67] By simple subtraction it follows that, for 22 of the 175 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[68]

ii. For 121 of the 234 (51.7%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 78 of 234 (33.3%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 119 of 136 (87.5%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[69]

ii. For 50 of 136 (36.8%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 37 of 136 (27.2%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

---

[68] By simple subtraction it follows that, for 29 of the 234 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[69] By simple subtraction it follows that, for 17 of the 136 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

66. The results described in ¶¶ 65.d. and 65.e are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 65.f. and 65.g. are not entirely consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case, which was in 2011.

67. *Bartender position* – No store-years had 30 or more hires of bartenders. Few individuals are hired into bartender positions because most bartenders are promoted from other TXRH positions. There are so few store-years that have 30 or more bartender hires that it is not possible to conduct meaningful tests with benchmark data from the Census.

68. *Any FOH position* - For each of the 2,338[70] store-years with 30 or more TXRH hires of any FOH position, I tested the equality of the U.S. Census %PAG of any FOH position and the %PAG of TXRH hires of any FOH position using the normal approximation to distribution of the difference. I computed the difference between the two %PAGs, measured in standard deviations of the difference. A positive difference indicates that the U.S. Census %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the U.S. Census %PAG is smaller than the %PAG of TXRH hires. The differences, from each comparison are displayed in Table 14. Those results, which are summarized in the top tableau of Table X-FOH, can be described as follows:

a. For 2,335 of the 2,338 (99.9%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of any FOH position were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations.[71] [72]

[70] The number of store-year comparisons used in a particular test will vary across different time periods (i.e., 2007-2014, 2007-2009, 2011-2014, 2007-2010, and 2011-2014).

[71]The content of the footnote is blank. The footnote number is left in this document to maintain the numbering of the original submission.

[72] By simple subtraction it follows that, for 3 of the 2338 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

b. For 980 of the 2,338 (41.9%) store-years, the differences were larger than 2 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 1 in 781,000,000,000.

c. For 565 of the 2,338 (24.2%) store-years, the differences were larger than 3 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 738 of the 739 (99.9%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of any FOH position were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.[73]

    ii. For 325 of the 739 (44.0%) store-years, the differences were larger than 2 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

    iii. For 190 of the 739 (25.7%) store-years, the differences were larger than 3 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or more than 1 in 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

    i. For 1,318 of the 1,319 (99.9%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[74]

[73] By simple subtraction it follows that, for 1 of the 739 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[74] By simple subtraction it follows that, for 1 of the 1319 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

ii. For 535 of the 1,319 (40.6%) store-years, the differences were larger than 2 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 309 of the 1,319 (23.4%) store-years, the differences were larger than 3 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 1,017 of the 1,019 (99.8%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[75]

ii. For 445 of the 1,019 (43.7%) store-years, the differences were larger than 2 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 256 of the 1,019 (25.1%) store-years, the differences were larger than 3 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 1,022 of the 1,023 (99.9%) store-years, the differences were positive (the U.S. Census %PAGs were larger than the %PAG of TXRH hires). If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.[76]

---

[75] By simple subtraction it follows that, for 2 of the 1019 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

[76] By simple subtraction it follows that, for 1 of the 1023 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

ii. For 410 of the 1,023 (40.1%) store-years, the differences were larger than 2 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

iii. For 240 of the 1,023 (23.5%) store-years, the differences were larger than 3 standard deviations. If hiring of any FOH position were age neutral, the probability of that result would be more than 7 standard deviations or more than 1 in 781,000,000,000.

69. The results described in ¶¶ 68.d. and 68.e. are not inconsistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. With 99.9% of the differences being positive (the U.S. Census %PAG being larger than the %PAG of TXRH hires) in the 2011-2014 period, there is no room for that percentage to be even higher in the 2007-2009 period. However, from 2007-2009 to 2011-2014 the percentage of differences larger than 2 standard deviations fell from 44.0% to 40.6%, and the percentage of differences larger than 3 standard deviations fell from 25.7% to 23.4%. While these differences are small, they do not contraindicate the hypothesis that there was an increase in the effort of TXRH to hire older workers. The results regarding an increase in effort from 2007-2010 to 2011-2014 (described in ¶¶ 68.f. and 68.g.) are very similar to the results described in ¶¶ 68.d. and 68.e.

## *%PAG AMONG HIRES COMPARED TO %PAG IN SNAGAJOB APPLICANT POOL*

70. *Waiter/Waitress position* - For each of the 867 store-years for which I had both actual hire data and Snagajob data for waiters and waitresses, I tested the equality of the Snagajob %PAG of waiters and waitresses and the %PAG of TXRH hires of

waiters and waitresses using the Mantel-Haenzel test[77] [78]. If hiring of waiters and waitresses were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

71. For each of the 555[79] store-years with 30 or more TXRH hires of waiters and waitresses and 30 or more corresponding Snagajob %PAGs, I tested the equality of the Snagajob %PAG of waiters and waitresses and the %PAG of TXRH hires of waiters and waitresses using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 15. A positive difference indicates that the Snagajob %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the Snagajob %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the middle tableau of Table X-W, can be described as follows:

   a. For 440 of the 555 (79.3%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[80]

[77] The number of store-year comparisons used in a particular test will vary across types of benchmarks (i.e., Census, Snagajob, and paper).

[78] In the case of the data on unsuccessful Snagajob applicants, the counts numbers of older and younger Snagajob applicants are directly available, allowing one to use the Mantel-Haenzel test of the equality of the %PAGs of actual hires and the %PAGs of Snagajob applicants without an assumption of normality of the differences between the %PAGs. This approach allows one to include all store years that have positive actual hires of a particular category of positions (i.e., waiters and waitresses, bus/service assistants, host/hostesses, and all FOH personnel. The alternative approach, which I used for the tests of the differences between the %PAGs of actual hires and the %PAGs published by the U.S. Bureau of the Census, assumes normality of the differences between the %PAGs based on the restriction that the analysis be confined to store-years for which there are 30 or more actual hires and 30 or more unsuccessful Snagajob applicants of the particular category of positions. Both approaches are valid. The Mantel-Haenzel test allows one to include more store-years in the analysis, but it has less power because it does not make use of normality. The alternative approach makes use of fewer store-years, but it has more power because of the normality assumption. Where possible, that is in the case of Snagajob bench marks or paper applicant bench marks, I have used both tests.

[79] The number of store-year comparisons used in a particular test will vary across the types of tests (i.e., Mantel-Haenzel and the alternative).

[80] By subtraction it follows that, for 115 of the 555 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

b. For 72 of the 555 (13.0%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[81]

c. For 13 of the 555 (2.3%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 7 standard deviations or 1 out of 604,000,000,000. [82]

d. When the analysis was restricted to the 2007-2009 period,

   i. For 61 of the 65 (93.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[83]

   ii. For 27 of the 65 (41.5%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000

   iii. For 9 of the 65 (13.8%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

   i. For 364 of the 474 (76.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of

---

[81] Tests based on counts of differences of two standard deviations will produce strongly significant results with smaller counts of such differences because differences of two standard deviations are much less likely than differences that are just positive.

[82] Tests based on counts of differences of three standard deviations will produce strongly significant results with smaller counts of such differences because differences of three standard deviations are much less likely than differences of two standard deviations.

[83] It follows that, for 4 of the 65 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[84]

ii. For 38 of the 474 (8.0%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 6.5 standard deviations or 1 out of 23,100,000,000.

iii. For 2 of the 474 (0.4%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 1.1 standard deviation or 1 out of 7.

f. When the analysis was restricted to the 2007-2010 period,

i. For 76 of the 81 (93.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[85]

ii. For 34 of the 81 (42.0%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 11 of the 81 (13.6%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 347 of 456 (76.1%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of

---

[84] It follows that, for 110 of the 474 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[85] It follows that, for 5 of the 81 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[86]

ii. For 30 of the 456 (6.6%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 5.0 standard deviations or 1 out of 2,900,000.

iii. For 2 of the 456 (0.4%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 1.1 standard deviations or 1 out of 8.

72. The results described in ¶¶ 71.d. and 71.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described ¶¶ 71.f. and 71.g. are also consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

73. *Bus/Server Assistant position* - For each of the 721 store-years for which I had both actual hire data and Snagajob data for bus/server assistants, I tested the equality of the Snagajob %PAG of bus/server assistants and the %PAG of TXRH hires of bus/server assistants using the Mantel-Haenzel test. If hiring of bus/server assistants were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

[86] It follows that, for 109 of the 456 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

74. For each of the 44 store-years with 30 or more TXRH hires of bus/server assistants and 30 or more corresponding Snagajob %PAGs, I tested the equality of the Snagajob %PAG of bus/server assistants and the %PAG of TXRH hires of bus/server assistants using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 16. A positive difference indicates that the Snagajob %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the Snagajob %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the middle tableau of Table X-BUS, can be described as follows:

a. For 33 of the 44 (75.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of 33 or more positive differences would be the equivalent of 3.2 standard deviations or 1 out of 1,590.[87]

b. For 1 of the 44 (2.3%) store-years, the difference was larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 1 or more positive differences would be the equivalent of -0.3 standard deviations or 1 out of 1.6, a result that provides no evidence of a disadvantage for older applicants or of a statistically significant advantage for younger applicants.

c. For none of the 44 (0.0%) store-years were the differences larger than 3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 2 of the 2 (100.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires).

[87] By subtraction it follows that, for 11 of the 44 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 0.7 standard deviations or 1 out of 4.[88]

ii. For none of the 2 (0.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

iii. For none of the 2 (0.0%) store-years, were the differences larger than 3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

e. When the analysis was restricted to the 2011-2014 period,

i. For 31 of the 42 (73.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 3 standard deviations or 1 out of 693.[89]

ii. For 1 of the 42 (2.4%) store-years, the differences was equal to -0.3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of -0.3 standard deviations or 1 out of 1.6, a result that provides no evidence of a disadvantage for older applicants or of a statistically significant advantage for younger applicants.

iii. For none of the 42 (0.0%) store-years, were the differences larger than 3 standard deviations. If hiring of bus/server assistants were age

[88] It follows that, for none of the 2 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[89] It follows that, for 11 of the 42 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

f. When the analysis was restricted to the 2007-2010 period,

i. For 2 of the 2 (100.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 0.7 standard deviations or 1 out of 4.[90]

ii. For none of the 2 (0.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

iii. For none of the 2 (0.0%) store-years, were the differences larger than 3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

g. When the analysis was restricted to the 2012-2014 period,

i. For 31 of 42 (73.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 3 standard deviations or 1 out of 693.[91]

---

[90] It follows that the Snagajob PAG shares were smaller than the shares of TXRH hires for none of the 2 store-years.

[91] It follows that, for 11 of the 42 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

ii. For 1 of the 42 (2.4%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of -0.3 standard deviations or 1 out of 1.6, a result that provides no evidence of a disadvantage for older applicants or of a statistically significant advantage for younger applicants.

iii. For none of the 42 (0.0%) store-years, were the differences larger than 3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

75. The results described in ¶¶ 74.d. and 74.e. show a very small number of before and after 2010 comparisons, so few that, based on those comparisons, it is not possible to draw meaningful conclusions regarding changes between the 2 periods. Similarly, the results described in ¶¶ 74.f. and 74.g. show a very small number of before and after 2011 comparisons, again so few that, based on those comparisons, it is not possible to draw meaningful conclusions regarding changes between the 2 periods.

76. *Host/Hostess position* - For each of the 814 store-years for which I had both actual hire data and Snagajob data for host/hostesses, I tested the equality of the Snagajob %PAG of host/hostesses and the %PAG of TXRH hires of host/hostesses using the Mantel-Haenzel test. If hiring of host/hostesses were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

77. For each of the 124 store-years with 30 or more TXRH hires of host/hostesses and 30 or more corresponding Snagajob %PAGs, I tested the equality of the Snagajob %PAG of host/hostesses and the %PAG of TXRH hires of host/hostesses using a t-

test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 17. A positive difference indicates that the Snagajob %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the Snagajob %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the middle tableau of Table X-HOST, can be described as follows:

a. For 120 of the 124 (96.8%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[92]

b. For 6 of the 124 (4.8%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 1.5 standard deviations or 1 out of 15.

c. For none of the 124 (0.0%) store-years were the differences larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 19 of the 19 (100.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of 4.6 standard deviations or 1 out of more than 524,000.[93]

    ii. For 3 of the 19 (15.8%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral,

[92] By subtraction it follows that, for 4 of the 124 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[93] It follows that, for none of the 19 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

the probability of that result would be the equivalent of 2.4 standard deviations or 1 out of 115.

iii. For none of the 19 (0.0%) store-years were the differences larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

e. When the analysis was restricted to the 2011-2014 period,

i. For 99 of the 103 (96.1%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[94]

ii. For 3 of the 103 (2.9%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of 0.2 standard deviations or 1 out of 2.

iii. For none of the 103 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

f. When the analysis was restricted to the 2007-2010 period,

i. For 21 of the 21 (100.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that

[94] It follows that, for 4 of the 103 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

result would be the equivalent of more than 4.9 standard deviations or 1 out of 2,100,000.[95]

ii. For 3 of the 21 (14.3%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of 2.3 standard deviations or 1 out of 87.

iii. For none of the 21 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

g. When the analysis was restricted to the 2012-2014 period,

i. For 98 of 102 (96.1%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[96]

ii. For 3 of the 102 (2.9%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostesses were age neutral, the probability of that result would be the equivalent of 0.2 standard deviations or 1 out of 2.

iii. For none of the 102 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

[95] It follows that none of the 21 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[96] It follows that, for 4 of the 102 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

78. The results described in ¶¶ 77.d. and 77.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 77.f. and 77.g. are also consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

79. _Bartender position_ – For each of the 114 store-years for which I had both hire data and Snagajob data for bartenders, I tested the equality of the Snagajob %PAGs of bartenders and the %PAG of TXRH hires of bartenders using the Mantel-Haenzel test. If hiring of bartenders were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of 3.4 standard deviations or 1 out of more than 141,000.

80. No store-years had 30 or more hires of bartenders. Few individuals are hired into bartender positions because most bartenders are promoted from other TXRH positions. There are so few store-years that have 30 or more bartender hires that it is not possible to conduct meaningful tests with benchmark data from the Snagajob.

81. _Any FOH position_ - For each of the 928 store-years for which I had both hire data and Snagajob data for all FOH positions, I tested the equality of the Snagajob %PAG of all FOH personnel and the %PAG of TXRH hires of all FOH personnel using the Mantel-Haenzel test. If hiring of all FOH personnel were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

82. For each of the 865 store-years with 30 or more TXRH hires of all FOH positions combined and 30 or more corresponding Snagajob %PAGs, I tested the equality of the Snagajob %PAG of FOH personnel and the %PAG of TXRH hires of FOH personnel using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 18. A positive

difference indicates that the Snagajob %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the Snagajob %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the middle tableau of Table X-FOH, can be described as follows:

a. For 722 of the 865 (83.5%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[97]

b. For 137 of the 865 (15.8%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

c. For 27 of the 865 (3.1%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 101 of the 102 (99.0%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than more than 7 standard deviations or 1 out of more than 781,000,000,000.[98]

    ii. For 53 of the 102 (52.0%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

    iii. For 16 of the 102 (15.7%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age

[97] By subtraction it follows that, for 143 of the 865 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[98] It follows that, for 1 of the 102 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

e. When the analysis was restricted to the 2011-2014 period,

   i. For 605 of the 745 (81.2%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[99]

   ii. For 78 of the 745 (10.5%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

   iii. For 9 of the 745 (1.2%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 4.7 standard deviation or 1 out of 882,000.

f. When the analysis was restricted to the 2007-2010 period,

   i. For 117 of the 120 (97.5%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[100]

   ii. For 59 of the 120 (49.2%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

   iii. For 18 of the 120 (15.0%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age

[99] It follows that, for 140 of the 745 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

[100] It follows that, for 3 of the 120 store-years, the Snagajob PAG shares were smaller than the shares of TXRH hires.

neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 587 of 726 (80.9%) store-years, the differences were positive (the Snagajob %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[101]

ii. For 69 of the 726 (9.5%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 9 of the 726 (1.2%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 4.8 standard deviations or 1 out of 1,100,000.

83. The results described in ¶¶ 82d. and 82.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 82.f. and 82.g. are also consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

## %PAG AMONG HIRES COMPARED TO %PAG IN PAPER APPLICANT POOL

84. *Waiter/Waitress position* - For each of the 284 store-years for which I had both hire data and paper applicant data for waiters and waitresses, I tested the equality of the paper %PAG of waiters and waitresses and the %PAG of TXRH hires of waiters and

[101] It follows that, for 139 of the 726 store-years, the U.S. Census PAG shares were smaller than the shares of TXRH hires.

waitresses using the Mantel-Haenzel test. If hiring of waiters and waitresses were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

85. For each of the 226 store-years with 30 or more TXRH hires of waiters and waitresses and 30 or more corresponding unsuccessful paper applications, I tested the equality of the paper %PAG of waiters and waitresses and the %PAG of TXRH hires of waiters and waitresses using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 19. A positive difference indicates that the paper %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the paper %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the bottom tableau of Table X-W, can be described as follows:

   a. For 216 of the 226 (95.6%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[102]

   b. For 64 of the 226 (28.3%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

   c. For 17 of the 226 (7.5%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

   d. When the analysis was restricted to the 2007-2009 period,

      i. For 42 of the 43 (97.7%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of

[102] For 10 of the 226 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

that result would be the equivalent of 6.8 standard deviations or 1 out of 200,000,000,000.[103]

ii. For 12 of the 43 (27.9%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 6.3 standard deviations or 1 out of more than 6,500,000,000.

iii. For 4 of the 43 (9.3%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 4.9 standard deviations or 1 out of more than 2,500,000.

e. When the analysis was restricted to the 2011-2014 period,

i. For 135 of the 144 (93.8%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.[104]

ii. For 45 of the 144 (31.3%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 11 of the 144 (7.6%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 81 of the 82 (98.8%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of

[103] For 1 of the 43 store-years, the paper PAG shares were smaller than the shares of TXRH hires.
[104] For 9 of the 144 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[105]

ii. For 19 of the 82 (23.2%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 6 of the 82 (7.3%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 5.9 standard deviations or 1 out of 515,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 90 of 96 (93.8%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[106]

ii. For 29 of the 96 (30.2%) store-years, the differences were larger than 2 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 5 of the 96 (5.2%) store-years, the differences were larger than 3 standard deviations. If hiring of waiters and waitresses were age neutral, the probability of that result would be the equivalent of 5.0 standard deviations or 1 in 4,000,000.

86. The results described in ¶¶ 85.d. and 85.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in

---

[105] For 1 of the 82 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

[106] For 6 of the 96 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

2010. The results described in ¶¶ 85.f. and 85.g. are also consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

87. *Bus/Server Assistant position* - For each of the 243 store-years for which I had both hire data and paper applicant data for bus/server assistants, I tested the equality of the paper %PAG of bus/server assistants and the %PAG of TXRH hires of bus/server assistants using the Mantel-Haenzel test. If hiring of bus/server assistants were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

88. For each of the 10 store-years with 30 or more TXRH hires of bus/server assistants and 30 or more corresponding unsuccessful paper applications, I tested the equality of the paper %PAG of bus/server assistants and the %PAG of TXRH hires of bus/server assistants using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 20. A positive difference indicates that the paper %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the paper %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the bottom tableau of Table X-BUS, can be described as follows:

   a. For 9 of the 10 (90.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 2.3 standard deviations or 1 out of 93.[107]
   b. For 2 of the 10 (20.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 2.0 standard deviations or 1 out of 48.
   c. For none of the 10 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/server assistants were age neutral, the probability of

[107] For 1 of the 10 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

d. When the analysis was restricted to the 2007-2009 period,

  i. For 4 of the 5 (80.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 0.9 standard deviations or 1 out of 5.[108]

  ii. For none of the 5 (0.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

  iii. For none of the 5 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/server assistant were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

e. When the analysis was restricted to the 2011-2014 period,

  i. For 5 of the 5 (100.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 1.9 standard deviations or 1 out of 32.[109]

  ii. For 2 of the 5 (40.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age

[108] For 1 of the 5 store-years, the paper PAG shares were smaller than the shares of TXRH hires.
[109] For none of the 5 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

neutral, the probability of that result would be the equivalent of 2.6 standard deviations or 1 out of 202.

iii. For none of the 5 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

f. When the analysis was restricted to the 2007-2010 period,

i. For 4 of the 5 (80.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 0.9 standard deviations or 1 out of 5.[110]

ii. For none of the 5 (0.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

iii. For none of the 5 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

g. When the analysis was restricted to the 2012-2014 period,

i. For 4 of 4 (100.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring

---

[110] For 1 of the 82 store-years, the paper PAG shares were smaller than the shares of TXRH hires

.

of bus/server assistants were age neutral, the probability of that result would be the equivalent of 1.5 standard deviations or 1 out of 16.[111]

ii. For 2 of the 4 (50.0%) store-years, the differences were larger than 2 standard deviations. If hiring of bus/server assistants were age neutral, the probability of that result would be the equivalent of 2.7 standard deviations or 1 out of 332.

iii. For none of the 4 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of bus/service assistants were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

89. The results described in ¶¶ 88.d. and 88.e. show a very small number of before and after 2010 comparisons, so few that, based on those comparisons, it is not possible to draw meaningful conclusions regarding changes between the 2 periods. Similarly, the results described in ¶¶ 74.f. and 74.g. show a very small number of before and after 2011 comparisons, again so few that, based on those comparisons, it is not possible to draw meaningful conclusions regarding changes between the 2 periods

90. *Host/Hostess position* - For each of the 240 store-years for which I had both hire data and paper applicant data for host/hostesses, I tested the equality of the paper %PAG of host/hostesses and the %PAG of TXRH hires of host/hostesses using the Mantel-Haenzel test. If hiring of host/hostesses were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

[111] For none of the 4 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

91. For each of the 38 store-years with 30 or more TXRH hires of host/hostess and 30 or more corresponding unsuccessful paper applications, I tested the equality of the paper %PAG of host/hostess and the %PAG of TXRH hires of host/hostess using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 21. A positive difference indicates that the paper %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the paper %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the bottom tableau of Table X-W, can be described as follows:

a. For 37 of the 38 (97.4%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 6.3 standard deviations or 1 out of more than 781,000,000,000.[112]

b. For 4 of the 38 (10.5%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 2.3 standard deviations or 1 out of 94.

c. For none of the 38 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants

d. When the analysis was restricted to the 2007-2009 period,

   i. For 9 of the 9 (100.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 2.9 standard deviations or 1 out of 512.[113]

   ii. For 1 of the 9 (11.1%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostess were age neutral, the

[112] For 1 of the 38 store-years, the paper PAG shares were smaller than the shares of TXRH hires.
[113] For none of the 9 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

probability of that result would be the equivalent of .9 standard deviations or 1 out of 5.

iii. For none of the 9 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostess were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants

e. When the analysis was restricted to the 2011-2014 period,

i. For 24 of the 25 (96.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 4.8 standard deviations or 1 out of 1,300,000.[114]

ii. For 2 of the 25 (8.0%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 1.2 standard deviations or 1 out of 9.

iii. For none of the 25 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

f. When the analysis was restricted to the 2007-2010 period,

i. For 13 of the 13 (100.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 3.7 standard deviations or 1 out of 8,200.[115]

[114] For 1 of the 25 store-years, the paper PAG shares were smaller than the shares of TXRH hires.
[115] For none of the 13 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

ii. For 2 of the 13 (15.4%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 1.8 standard deviations or 1 out of 29.

iii. For none of the 13 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants.

g. When the analysis was restricted to the 2012-2014 period,

i. For 12 of 13 (92.3%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 2.9 standard deviations or 1 out of 585.[116]

ii. For 1 of the 13 (7.7%) store-years, the differences were larger than 2 standard deviations. If hiring of host/hostess were age neutral, the probability of that result would be the equivalent of 0.6 standard deviations or 1 out of 4.

iii. For none of the 13 (0.0%) store-years, the differences were larger than 3 standard deviations. If hiring of host/hostesses were age neutral, the probability of 0 or more positive differences would be the equivalent of 1 out of 1, so the result provides no evidence of a disadvantage for older applicants or of an advantage for younger applicants

92. The results described in ¶¶ 91.d. and 91.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described in ¶¶ 91.f. and 91.g. are consistent with

[116] For 1 of the 13 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

93. *Bartender position* – For each of the 44 store-years for which I had both hire data and paper data for bartenders, I tested the equality of the paper %PAGs of bartenders and the %PAG of TXRH hires of bartenders using the Mantel-Haenzel test. If hiring of bartenders were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of 2.0 standard deviations or 1 out of more than 59.

94. *Any FOH position* - For each of the 293 store-years for which I had both hire data and paper applicant data for all FOH positions, I tested the equality of the paper %PAG of all FOH personnel and the %PAG of TXRH hires of all FOH personnel using the Mantel-Haenzel test. If hiring of all FOH personnel were age neutral, the probability of obtaining results shown by the data would be an extremely small number which would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

95. For each of the 246 store-years with 30 or more TXRH hires of all FOH positions combined and 30 or more corresponding unsuccessful paper applications, I tested the equality of the paper %PAG of all FOH positions combined and the %PAG of TXRH hires of all FOH positions combined using a t-test. The differences between the two %PAGs, measured in standard deviations of the difference, are displayed in Table 22. A positive difference indicates that the paper %PAG is larger than the %PAG of TXRH hires, while a negative difference indicates that the paper %PAG is smaller than the %PAG of TXRH hires. The results, which are summarized in the bottom tableau of Table X-FOH, can be described as follows:

a. For 232 of the 246 (94.3%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH

personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[117]

b. For 64 of the 246 (26.0%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

c. For 17 of the 246 (6.9%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

d. When the analysis was restricted to the 2007-2009 period,

    i. For 47 of the 47 (100.0%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[118]

    ii. For 13 of the 47 (27.7%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 6.5 standard deviations or 1 out of 33,500,000,000.

    iii. For 5 of the 47 (10.6%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 5.7 standard deviations or 1 out of 152,000,000.

e. When the analysis was restricted to the 2011-2014 period,

    i. For 142 of the 155 (91.6%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that

[117] For 14 of the 246 store-years, the paper PAG shares were smaller than the shares of TXRH hires.
[118] For none of the 47 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.[119]

ii. For 41 of the 155 (26.5%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 10 of the 155 (6.5%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be more than 7 standard deviations or 1 out of more than 781,000,000,000.

f. When the analysis was restricted to the 2007-2010 period,

i. For 90 of the 91 (98.9%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[120]

ii. For 23 of the 91 (25.3%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 7 of the 91 (7.7%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 6.4 standard deviations or 1 out of 16,700,000,000.

g. When the analysis was restricted to the 2012-2014 period,

i. For 96 of 105 (91.4%) store-years, the differences were positive (the paper %PAGs were larger than the %PAG of TXRH hires). If hiring of all FOH personnel were age neutral, the probability of that result

[119] For 13 of the 155 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

[120] For 1 of the 91 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.[121]

ii. For 25 of the 105 (23.8%) store-years, the differences were larger than 2 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of more than 7 standard deviations or 1 out of more than 781,000,000,000.

iii. For 6 of the 105 (5.7%) store-years, the differences were larger than 3 standard deviations. If hiring of all FOH personnel were age neutral, the probability of that result would be the equivalent of 5.6 standard deviations 1 in 115,000,000.

96. The results summarized in ¶¶ 95.d. and 95.e. are consistent with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's Letter of Determination in 2010. The results described summarized in ¶¶ 95.f. and 95.g. are also consistent, with the hypothesis that TXRH increased its effort to hire older workers after the EEOC's filing of this case 2011.

## ***CONCLUSIONS REGARDING AGE NEUTRALITY OF TXRH HIRING***

97. *Waiter/Waitress positions* – The results of testing the %PAGs of actual hires of waiters and waitresses against Census data, Snagajob data, and paper application data are quite similar. All three sets of tests show that the %PAGs of actual hires of waiters and waitresses are statistically significantly lower than the %PAGs of each of the 3 benchmarks. That is to say if the hiring of waiters and waitresses by TXRH were age neutral, it would be very unlikely to find so many store-years for which %PAGs of actual hires of waiters and waitresses were significantly lower than %PAGs of each of the 3 benchmarks. The differences between the %PAGs of hires

[121] For 6 of the 97 store-years, the paper PAG shares were smaller than the shares of TXRH hires.

and the %PAGs of benchmarks provide evidence of departures from age neutrality that are statistically significant at levels at or beyond the levels typically required by the courts.

98. *Bus/Service Assistant positions* – The results of testing the %PAGs of actual hires of bus/service assistants against Census data, Snagajob data, and paper application data are similar. All three sets of tests show that the %PAGs of actual hires of bus/service assistants are statistically significantly lower than the %PAGs of each of the 3 benchmarks. That is to say if the hiring of bus/service assistants by TXRH were age neutral, it would be very unlikely to find so many store-years for which %PAGs of actual hires of bus/service assistants were significantly lower than %PAGs of each of the 3 benchmarks. The differences between the %PAGs of hires and the %PAGs of benchmarks provide ample evidence of departures from age neutrality that are statistically significant at levels at or beyond the levels typically required by the courts. The evidence from the counts of positive differences between %PAGs of hires and benchmarks is just as compelling as in the case of waiters and waitresses. The evidence from counts of deviations of 2 or 3 standard deviations based on Snagajob and paper applications is not as compelling, but that is easily explained by the fact that the number of comparisons based on 2 or 3 standard deviations is much smaller and the likelihood of finding such results is substantially reduced by the lower numbers of hires of bus/service assistants.

99. *Host/Hostess positions* – The results for hosts and hostesses are similar to the results for bus/service assistants. As is the case with bus/service assistants, the numbers of hires of hosts and hostesses are substantially smaller than in the case of waiters and waitresses. The results of testing the %PAGs of actual hires of hosts and hostesses against Census data, Snagajob data, and paper application data are quite similar. All three sets of tests show that the %PAGs of actual hires of hosts and hostesses are statistically significantly lower than the %PAGs of each of the 3 benchmarks. That is to say if the hiring of hosts and hostesses by TXRH were age neutral, it would be very unlikely to find so many store-years for which %PAGs of actual hires of hosts

and hostesses were significantly lower than %PAGs of each of the 3 benchmarks. The differences between the %PAGs of hires and the %PAGs of benchmarks provide ample evidence of departures from age neutrality that are statistically significant at levels at or beyond the levels typically required by the courts. The evidence from the counts of positive differences between %PAGs of hires and benchmarks is just as compelling as in the case of waiters and waitresses. The evidence from counts of deviations of 2 or 3 standard deviations based on Snagajob and paper applications is not as compelling, but that is easily explained by the fact that the number of comparisons based on 2 or 3 standard deviations is much smaller and the likelihood of finding such results is substantially reduced by the lower numbers of hires of hosts and hostesses.

100. *Bartender positions* – Because there are so few hires of bartenders, one would expect less compelling evidence of departure from age neutrality. The result of the Mantle-Haenzel test based on the Snagajob data is that the Snagajob %PAGs of bartenders are larger than the %PAGs of TXRH hires of bartenders but the differences are not significant at the level of 2 standard deviations.

101. *All FOH positions* – The results for all FOH personnel are similar to the results for waiters and waitresses. The similarity is not surprising because the numbers of hires of all FOH personnel are necessarily larger than the numbers of hires of waiters and waitresses. The results of testing the %PAGs of actual hires of all FOH personnel against Census data, Snagajob data, and paper application data are quite similar. All three sets of tests show that the %PAGs of actual hires of all FOH personnel are statistically significantly lower than the %PAGs of each of the 3 benchmarks. That is to say if the hiring of FOH personnel by TXRH were age neutral, it would be very unlikely to find so many store-years for which %PAGs of actual hires of waiters and waitresses were significantly lower than %PAGs of each of the 3 benchmarks. The results based on the Snagajob data and paper application data are also consistent with the hypothesis that TXRH increased its effort to hire older FOH workers after the EEOC's Letter of Determination in 2010. The results are also consistent with the

hypothesis that TXRH increased its effort to hire older FOH workers after the EEOC's filing of this case in 2011.

### *Shortfalls of Hires of Older Applicants*

102. For each store-year with positive actual hires and Census data, I computed the expected PAG of hires as the product of the Census %PAGs for each store-year and position and the corresponding numbers of actual hires.[122]

103. For each store with Census data, I computed the product of the Census %PAGs (for each store and position) and the corresponding numbers of actual hires for each store-year. For each store without Census data, I computed the product of the weighted average %PAGs across all stores for each position and the corresponding numbers of actual hires for each store-year.

104. I calculated shortfalls of hires for each store-year and each position by subtracting actual numbers of PAG hires for each store-year and each position from the corresponding expected PAGs of hires that were defined above.

105. The shortfalls for each year and each position are shown in Table-Shortfalls. The total shortfall for waiters and waitresses, bus/service assistants, hosts and hostesses, bartenders and all FOH personnel are 14,604; 10,477; 4,685; 260; and 30,026.

[122] There is a difficulty in dealing with individuals who are hired into multiple positions. My counts of hires for a position include anyone hired into that position, but the sum of those counts exceeds the total number of hires because of double counting. My solution to this problem was to scale back the counts of each position so that their sum matched the total number of individuals hired.

## *CLOSING*

106. This report is necessarily preliminary because it is based on the information that is currently available to me. If more information is forthcoming, I may be able to reach additional conclusions. My investigation is ongoing. If additional information becomes available, I will consider it. I will advise Plaintiffs' counsel if my opinions change or if I develop new opinions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: February 19, 2016

Amended February 25, 2016

David L. Crawford, Ph.D.

Exhibit 1

# *CURRICULUM VITAE* OF DAVID L. CRAWFORD, PH.D.

November 2015

Econsult Corporation
1435 Walnut Street, Suite 300
Philadelphia, PA 19102
Voice: (215) 382-1894
E-mail: crawford@econsult.com

## EDUCATION

**University of Wisconsin**, Madison, 1972-1976
Ph.D. Economics, 1979
M.S. Economics, 1974

**University of North Carolina**, Chapel Hill, 1968-1972
B.A. with Honors, Economics, 1971
Phi Beta Kappa

## CURRENT POSITIONS

**President and Founder, Econsult Corporation**, Philadelphia, PA, since 1979. Provides economic and statistical consulting for private firms and government agencies including expert testimony (PA, NJ, NY and federal courts) and other economic and statistical analyses. Litigation experience includes employment discrimination, wage and hour claims, employment termination, personal injury and wrongful death, damage analysis, antitrust, and intellectual property. Non-litigation experience includes extensive consulting on human resource management issues for private employers and public employers, including the Administrative Office of the Pennsylvania Courts, the First Judicial District of the Commonwealth of Pennsylvania, the Pennsylvania Convention Center Authority, Delaware County (Pennsylvania), Philadelphia Community College, the Colonial School District (Pennsylvania), the Philadelphia School District, and the Bermuda Ministry of Finance.

**Senior Fellow, Management Department, The Wharton School, University of Pennsylvania**, Philadelphia, PA, since July 2014. Affiliated with the Center for Human Resources.

**Senior Advisor, Philadelphia Mayor's Advisory Council on Construction Industry Diversity,** since 2008.

**Burlington County (NJ) Democratic Committeeman, Medford District 7,** Elected June 2010; re-elected June 2012 and June 2014.

## PAST ACADEMIC POSITIONS

**Adjunct Professor of Management, The Wharton School, University of Pennsylvania**, Philadelphia, PA, 1991-2014. Taught microeconomics and human resource management to students in the Wharton MBA, Executive MBA, and undergraduate programs. Received Wharton Dean's Award for Excellent Teaching in the MBA Core Curriculum (1992) and Wharton Executive MBA Core Teaching Award (1997, 2005, 2006, and 2009).

**Various Adjunct Faculty Positions in the Departments of Management and Economics, University of Pennsylvania**, Philadelphia, PA, 1984-2014. Taught microeconomics and human resource management to students in the Wharton MBA and Executive MBA programs. Also taught microeconomics and labor economics to undergraduates. Taught microeconomics and statistics in the Fels Institute's Master of Public Administration and Executive Master of Public Administration programs. Taught microeconomics in the Engineering School's Executive MSE program and statistics in the graduate program of the Annenberg School for Communication. Received Excellence in Teaching Award from Wharton MBA students (1987) and Irving B. Kravis Prize for Distinction in Undergraduate Teaching in Economics (1991).

**Member, Board of Senior Scholars, The National Center on the Educational Quality of the Workforce, University of Pennsylvania**, Philadelphia, PA, 1991-1996.

**Assistant Professor of Economics, Rutgers University**, New Brunswick, NJ, 1981-1985, on leave 1984-1985. Taught introductory and intermediate microeconomics to undergraduates.

**Assistant Professor of Economics, University of Pennsylvania**, Philadelphia, PA, 1979-1982, on leave 1981-1982. Taught introductory economics, undergraduate statistics, undergraduate labor economics, and graduate econometrics.

**Lecturer of Economics, University of Pennsylvania**, Philadelphia, PA, 1976-1979. Taught introductory economics, undergraduate statistics, undergraduate labor economics, and graduate econometrics.

## PAST GOVERNMENT POSITIONS

**Member, Program Evaluation Committee, Philadelphia 21st Century Review Forum,** Appointed by Mayor John Street, 2004.

**Chairperson, New Jersey State Council on Vocational Education**. Appointed to Council by Governor Florio; Elected chairperson by Council members; 1991-1994.

**Commissioner, New Jersey State Employment and Training Commission**. Appointed by Governor Florio; Chairperson of Occupational Education Task Force; Member of Executive Committee, 1990-1994.

**Member, Philadelphia Naval Shipyard Labor and Retraining Committee**. Appointed by the Director of Commerce of the City of Philadelphia.

**Executive Director, Secretary's Commission on Workforce Quality and Labor Market Efficiency, U.S. Department of Labor**, Washington, DC, 1988-1989. Appointed by Secretary Ann McLaughlin.

## OTHER PAST POSITIONS

**Treasurer, Medford NJ Democratic Club,** July 2012 through December 2013.

**Co-Manager of Campaign of Brett Maria Blyshak, Becca Gutwirth, and George Youngkin for Medford (NJ) Township Council,** 2013.

**Member of Board of Directors, Fairmount Capital Advisors, Inc.,** 2010-2012.

**Senior Advisor to George and Nancy Youngkin's Campaign for Medford (NJ) Township Council,** 2012.

**Policy Advisor, Philadelphia Mayoral Campaign of Michael Nutter**, 2006-7.

**Policy Advisor, Pennsylvania Gubernatorial Campaign of Lynn Yeakel**, 1994.

**Director, Employment Management Association Foundation**. Elected by Board of Directors, 1993-1995.

**PUBLICATIONS AND WORKING PAPERS**

"The Pinelands Branch Library and Its Place in the Burlington County Library System," June 13, 2013.

"The Budget Deficit: Why It Doesn't Matter," ***Philadelphia Inquirer*** Op-Ed, July 19, 2011.

"Should Governments Cut Fuel Taxes? No!" ***Business Spotlight***, November-December 2008, p. 26.

"'Oil Futures' Are a Phony Target" ***Philadelphia Daily News*** Op-Ed, August 4, 2008.

"We Need a Gas-Tax Hike, Not a Tax Holiday" ***Philadelphia Daily News*** Op-Ed, May 12, 2008 (with Richard Voith).

"'It's Going to Cost Whatever It Costs'" ***Philadelphia Daily News*** Op-Ed, September 20, 2005.

"George W. Bush, CEO: How's He Doing?" ***Philadelphia Daily News*** Op-Ed, October 12, 2004.

"Smart Growth and Affordable Housing," Chapter 3 of ***Growth Management and Affordable Housing – Do They Conflict?***, Brookings Institution Press, 2004 (with Richard Voith).

"Performance-Based Pay for Teachers Will Work," ***Philadelphia Daily News*** Op-Ed, October 20, 2003 (with Anita Summers).

"Convention Center Deal: Truly a Grand Slam," ***Philadelphia Daily News*** Op-Ed, July 24, 2003.

"Unify the Workforce," ***Philadelphia Inquirer*** *Op*-Ed, June 13, 2003.

"Simple Inference in Multinomial and Ordered Logit," ***Econometric Reviews***, 17(3), 289-299 (1998) (with Robert Pollak and Francis Vella).

"Schools and Labor Market Outcomes," ***Economics of Education Review***, June 1997, 255-269 (with Amy W. Johnson and Anita A. Summers).

"Managing Diversity," ***Next Step***, Winter 1997.

"Introduction" (Chapter 1) and "Conclusion" (Chapter 8) of ***The Social Benefits of Education***, edited by Jere R.Behrman and Nevzer G. Stacey, The University of Michigan Press, (with Jere R. Behrman and Nevzer G. Stacey), Winter 1997.

"Workforce Diversity: Sources and Implications," ***Next Step***, Fall 1996.

"Investing in People," ***Chief Executive***, October 1990. Reprinted in J.P. Donlon, editor, ***The Best of Chief Executive***, Homewood, Illinois: Business One Irwin, 1993.

# EXPERT TRIAL AND DEPOSITION TESTIMONY OF
# DR. DAVID L. CRAWFORD, Ph.D.
# Since June 2011

1. *Marie Arnez and Alex Arnez v. The TJX Companies, Inc., and Marmaxx Operating Corp.*, U.S. District Court for the Eastern District of Pennsylvania, No. 5:13-cv-02548-JKG. Testified for plaintiffs in personal injury case. (Trial – September 2014)

2. *Thomas E. Perez, Secretary of Labor, United States Department of Labor v. American Future Systems, Inc. d/b/a Progressive Business Publications, a corporation; and Edward Satell, individually and as President of the above referenced corporation,* U.S. District Court for the Eastern District of Pennsylvania, No. 12-6171. Testified for plaintiffs in wage and hour case. (Deposition – April 2014)

3. *Sabrina Hart and Reka Furedi, Individually and on behalf of those similarly situated and the New York Rule 23 Class v. Rick's Cabaret International, Inc., RCI Entertainment (New York), Inc., and Peregrine Enterprises, Inc.,* Case No. 09-CV-3043 (S.D.N.Y.) Testified for plaintiffs in wage and hour case. (Deposition – March 2014)

4. *Office of Federal Contract Compliance Programs v. Bank of America*, Case No. 1997-OFC-16, SOL Case No. 96-10335. Testified for OFCCP in employment discrimination case. (Trial – March 2013)

5. *Noreen Lewis v. Toyota Motor Company, et al.*, Philadelphia County Court of Common Pleas, No. 1088. Testified for defendants in personal injury case. (Trial – March 2013)

6. *Jesus Hernandez. et al. v. Ashley Furniture Industries, Inc., et al.*, U.S. District Court for the Eastern District of Pennsylvania, No. 10-05459(BMS). Testified for plaintiff in wage and hour case. (Deposition – January, February 2013)

7. *Mark S. Groff v. City of Reading, Pennsylvania and William M. Heim, individually,* U.S. District Court for the Eastern District of Pennsylvania, No. 11-CV-03641. Testified for plaintiff in employment termination case. (Trial – December 2012)

8. *Office of Federal Contract Compliance Programs v. VF Jeanswear Limited Partnership*, Case No. 2011-OFC-00006. Testified for OFCCP in employment discrimination case. (Deposition – September 2012)

9. *Office of Federal Contract Compliance Programs v. Bank of America*, Case No. 1997-OFC-16, SOL Case No. 96-10335. Testified for OFCCP in employment discrimination case. (Deposition – June 2012)

10. *Tanya Youngblood, et al. v. Family Dollar Stores, INC., et al.*, U.S. District Court for the Southern District of New York, 09 Civ. 3176 (RMB) and 10 Civ. 7580 (RMB). Testified for plaintiffs in Fair Labor Standards Act case. (Deposition – April 2012)

11. *William Douglas Fulghum, et al. v. Embarq Corporation, et al.*, U.S. District Court for the District of Kansas, No. 07-CV-2602 (EFM/JPO). Testified for plaintiffs in age discrimination case. (Deposition – December 2011)

12. *Alia Sabur v. Yury Gogotsi and Drexel University*, Philadelphia County Court of Common Pleas, No.001411. Testified for plaintiff in defamation case. (Trial – June 2011)

# Exhibit 2

## Documents Reviewed

### Pleadings

Amended Complaint

71_Amended Proposed Case Management Plan- April 19, 2013

Defendants' First Supplemental Objections and Responses to Plaintiff EEOC's First Set of Document Requests.

Defendants' First Supplemental Objections and Answers to Plaintiff EEOC's First Set of Interrogatories

Defendants' Supplemental Objections and Answers to EEOCs Fifth Set of Interrogatories

Declaration of Markus Penzel in Support of EEOC's Opposition to Defendant's Renewed Motion to Change Venue.pdf

Joint Statement (Filed October 17, 2014)

Response to ADEA Second Request For Information Final.xls

Objections and Answers to EEOCs Fifth Set of Interrogatories-Exhibit B_1.xls

Unopposed Motion to Amend Case Management Plan As Discussed During Status Conference of December 9, 2013

Ultipro Field Stipulation

### Court Orders

**Order on Motion to Dismiss**

Activity in Case 1_11-cv-11732-DJC Equal Opportunity Commission v. Texas Roadhouse, Inc.pdf – January 11, 2016

Stipulation Concerning Parties' Use of Information Contained in Successful Paper Applications

### Depositions Including Exhibits

Chris Cooper – March 11, 2015

Juanita Coleman – June 11, 2015

Scott Cooper- March 11, 2015

Scott Colisi March 30, 2015

Mark Hymes – March 27, 2015

Julie Juvera – May 5, 2015

Nicole Green – April 24, 2015

Mandy Kramer – October 23, 2015

Samantha Mennie – June 19, 2015

Kevin Vanilew – March 27, 2015

**Data Files Provided by Counsel for Plaintiffs**

**Employee Files:**

TXRH00000001 employee info.xls

TXRH00000002 employee info.xls

TXRH0719380 - Confidential - Supp. Response Int No. 3_FOHWithDOB.xls

TXRH0719381 - Confidential - Supp. Response Int No. 3_FOHWithPositions.xls

TXRH2410595.xls

TXRH2410596.xls

TXRH2410599_Confidential_EmphComp.csv

TXRH2410600_Confidential_Iemppers.csv

TXRH2410601_Confidential_Ipearhist. csv

TXRH2410602_Confidential_PayRegData.csv

TXRH2410603_Confidential_PayrRegKeys. csv

TXRH2410604_Confidential_Person.csv

TXRH2426189 _Confidential_NamebyEEID.csv

TXRH2401554_Confidential.xls

Ultipro Job Codes and Job Titles

**Unsuccessful Paper Application Images**

TEXAS_20140612_VOL001 (Bates Range TXRH00003698 – TXRH0218274)

TEXAS_20141023_VOL001 (Bates Range TXRH0218276- TXRH0230528)

TEXAS_20141023_VOL002 (Bates Range TXRH0230531 – TXRH0238261)

20141209 TXRHProduction (Bates Range TXRH0239153 – TXRH0568367)

TEXAS_20150122_VOL001 (Bates Range TXRH0568482 – TXRH0639747)

TXRH0639759 – TXRH0719371

TEXAS_20150506_VOL001 (Bates Ranges TXRH0721029–TXRH1594630, TXRH2290535 – TXRH2297847, TXRH2401007- TXRH2401169)

TXRH20150702_VOL001(Bates Ranges TXRH2401794_TXRH2404520 and TXRH2404522- TXRH2405447)

TEXASROADHOUSE_20150717_VOL001(TXRH2407025-TXRH2407603)

TEXASROADHOUSE_20150723_VOL001(TXRH2407604-TXRH2410240)

TEXASROADHOUSE_20150730_VOL001(TXRH2410241-TXRH2410378)

TXRH2410689-TXRH241233)

TXRH2412134-TXRH2416135)

2014_7_18_UpdatedConcordanceFieldExport.xls

**Snag job Electronic Files:**

SubpoenaInfo_TexasRoadhouse_Mongo.xls(2013)

SubpoenaInfo_TexasRoadhouse_Mongo.xls(Feb2015)

SubpoenaInfo_TexasRoadhouse.xls(March2015),

SubpoenaInfo_TexasRoadhouse.xls(May2015)

SubpoenaInfo_TexasRoadhouse_SQL.xls(2013)

SubpoenaInfo_TexasRoadhouse_SQL.xls(May2015)

TXRH2401554_CONFIDENTIAL.xls

TXRH0639748

TXRH0719372

**Location Data:**

TXRH0000006 retaurante listing.xls

TXRH0720881.xls

TXRH1594635_Confidential_storelist.xls

TXRH2410597_Confidential_Company.xls

Native Excel Files of Store Lists (TXRH2401646_TXRH2401792)

**Other Documents**

Complete Data Dictionary.pdf

Fax from Kenneth An to TXRH dated November 20, 2009

Fax from Kenneth An to TXRH dated February 22, 2010

EEOC v. TXRH – Tab 16.pdf

Email from Opposing Counsel to Markus Penzel on June 5, 2015 describing extraction of dates of birth from JSON files.

Letter from Opposing Counsel from Markus Penzel describing Ultipro production (August 20, 2015)

Email to Mandy Kramer from Mark Simpson dated September 28, 2012

TXRH2401793_Confidential_TRHCandidate.xls

TXRH1381984_ConfidentialJobPostings.xls

TXRH0783116_Confidential2014MarketPartners.xls

TXRH0783115_Confidential2013MarketPartners.xls

**Data Files Downloaded from www.Census.gov**

http://factfinder.census.gov/legacy/aff_sunset.html
EEO_10_5YR_EEOALL12W_with_anntotal.xls

**Data Files Downloaded from Missouri Census Data Center**

http://mcdc.missouri.edu/websas/geocorr12.html
ZipCrossWalk.xls